Amos J. FLEMING and Joyce H. Fleming, Appellees,

v.

The BAPTIST GENERAL CONVENTION OF OKLAHOMA d/b/a Miami Baptist Hospital, et al., Appellant.

No. 54711.

(Nos. 54712, 54856 and 54857 consolidated.)

Supreme Court of Oklahoma.

June 23, 1987.

Rehearing Denied Sept. 16, 1987.

Grigg, Richards & Paul by John R. Paul, Tulsa, for appellant.

Stephen C. Wolfe, Tulsa, for appellees.

HARGRAVE, Vice Chief Justice.

Amos and Joyce Fleming brought the instant action against the Baptist General Convention of the State of Oklahoma, doing business as Miami Baptist Hospital, and Glenn W. Cosby, M.D. As originally brought, the action also named a drug manufacturer as defendant. That defendant is no longer a party to the action. This action sought recovery for damages resulting from an injection of two drugs into the left thigh of Mrs. Fleming which caused personal injury.

The cause was tried to a jury and on December 11, 1979, the jury returned a verdict in favor of defendant Cosby, M.D., and against the remaining defendant, Miami Baptist Hospital, in the amount of $60,-000.00. Defendant hospital now appeals. No appeal is prosecuted against the defendant's verdict in favor of Dr. Cosby and he is not a party to this appeal.

By order of October 20, 1980, this Court consolidated four separate appeals numbered 54,712, 54,856, and 54,857 under the surviving number, 54,711, and the parties submitted one series of briefs applicable to all appeals.

As originally brought, the action contained a setoff and counterclaim against plaintiff, Joyce Fleming, for unpaid medical bills owed to the defendant hospital. That claim was severed for trial and is not yet at issue.

Briefly, the facts disclosed by the transcript of the trial are that Joyce Fleming had a chronic history of severe pain originating from the kidneys, back and migraine headaches for many years. In 1968 her personal physician of several years prescribed a standing order for Talwin and Atarax to be given together, on demand. Thereafter, from September, 1968 through October 18, 1971, she went to the emergency room of the Miami Baptist Hospital and received at least 301 separate intramuscular injections of the drugs. Because of the number of injections, plaintiff was injected on sites rotated between arms, thighs and buttocks. In addition to these injections, Mrs. Fleming received injections in 1970 at her home which were administered by her mother.

On October 19, 1971, Mrs. Fleming was taken to defendant's emergency room before dawn for an injection for migraine. A member of the hospital staff prepared the injection and administered it into the left thigh. Plaintiff experienced immediate pain and by the time she had returned home the injection site began discoloring. She consulted Dr. Cosby about the condition that afternoon. The following day she was admitted to the hospital for treatment of the problem. The deterioration of the flesh at the injection site continued to grow progressively worse. The skin and subcutaneous tissue down to the fascia deteriorated and gangrene set in. The skin and subcutaneous tissue eroded and, after the tissue death had run its course, the plaintiff required two skin grafts to close the wound. The nature of the injury and the treatment given necessitated the injury to remain open until late December, over two months.

Plaintiff attempted to recover against the doctor, theorizing the injury was a result of his prescription which allowed plaintiff to receive too many shots under proof that injections, of themselves, harm the body and can precipitate or contribute to the injury experienced. Plaintiff proceeded against the hospital under the theory and proof that the injection which precipitated this injury was not given deep into the muscle as it was intended to be given, but into the fat between the skin and muscle, or the subcutaneous tissue. Additionally, plaintiff sought to apply the doctrine of res ipsa loquitur to this injury, thus the plaintiff was entitled to an inference that negligence in administering the injection caused the injury.

The defendant Miami Baptist Hospital contends that the trial court committed er-

ror in overruling the defendant hospital's demurrer to plaintiff's evidence, motion for directed verdict, and motion for judgment notwithstanding the verdict. The basis for this argument is the contention that there is a total lack of evidence to support either the theory of specific negligence against the hospital or a res ipsa loquitur theory. The specific negligence alleged against the hospital is the theory that the Atarax and Talwin injection was given subcutaneously rather than intramuscularly. Defendant contends the doctrine of res ipsa loquitur is not available in this type of instance where the injury is a result of an improper injection. Additionally, defendant contends there is a lack of evidentiary basis for application of the doctrine in this cause.

Insofar as the defendant contends there is no evidentiary basis for submission of the theory of negligence on the part of the hospital to the jury, that point of error must be refused. Defendant contends there is no evidence the injection was given subcutaneously. Defendant states the entire theory that the injury was caused by a subcutaneous injection of Atarax comes from the testimony of Dr. Pat Fite. It is contended that opinion is mere conjecture because that opinion was his conclusion drawn from observed facts. Defendant cites several cases stating that where there is no evidence submitted in the trial of a personal injury action to establish primary negligence on the part of the defendant, it is proper to sustain a demurrer to the evidence or direct a verdict for the defendant. Admittedly, this is a correct statement of the law. However, an examination of the evidence in this case will not support its applicability here. An examination of the thousand-plus page transcript of the trial discloses the following testimony of Dr. Fite beginning at p. 371:

"Q. Now, Doctor, based on those facts, do you have an opinion as to whether or not Mrs. Fleming sustained an injury from the shot injected into her lateral left thigh in the emergency room of Miami Baptist Hospital at approximately 5:30 on October 15, 1971?

. . . . .

A. Yes, sir.

Q. And what is that opinion?

A. From the history and subsequent followup on it and surgeries and all and the catastrophic onset, she very obviously had immediate damage to the soft tissues of the anterior lateral left thigh where she received her shot.

Q. Do you have an opinion as to why she received such injury?

A. Yes, sir.

Q. And what is that, please, sir?

. . . . .

A. She received a shot of combined drugs, the Talwin and Atarax, and with immediate severe pain and it wasn't delayed or anything of this nature, it was right at the immediate time, in fact during the—while the shot was still being given, and it is my opinion that this was injected into the subcutaneous tissue. There is no evidence at any time later on of any disruption or slough of the deeper muscle or the covering of the muscle, the fascia, nor did it slough out, die, or become involved, and so whatever happened, it happened in the subcutaneous tissue.

. . . . .

Q. Do you have an opinion, Doctor, as to whether or not it constitutes proper medically accepted practice to inject the shot such as was injected into the thigh of Mrs. Fleming subcutaneously?

. . . . .

A. Not the Atarax. No way."

Defendant's brief tacitly admits that evidence of an opinion as to causation exists through the testimony of Dr. Fite, but it is contended the quality of this opinion evidence is suspect, in that it was his conclusion from the recorded facts. It is stated this conclusion is "improbable". However, the test for granting a demurrer to the evidence or motion for a directed verdict does not refer to improbable evidence. Neither motion should be granted unless there is an entire absence of proof to show any right of recovery. *Fletcher v. Meadow Gold Co.*, 472 P.2d 885 (Okl.1970). In an

action of legal cognizance, a demurrer to plaintiff's evidence or motion for directed verdict should be overruled unless there is an entire absence of proof tending to show a right to recover; and in passing upon a demurrer to the evidence or motion for directed verdict, the trial court must consider true all evidence against which the demurrer or motion is directed together with all inferences that may reasonably be drawn therefrom, and disregard all conflicting evidence favorable to the demurrant. *Condo v. Beal,* 424 P.2d 48 (Okl. 1967).

Considering the plaintiff's evidence as true, as this Court must, it is apparent that causation and negligence were established through the opinion testimony of plaintiff's expert witness. Similarly, the quoted testimony establishes a breach of duty, thus it is seen that the trial court did not err in submitting the case to the jury on the issue of specific negligence. Also, no error is found in the trial court's overruling defendant's demurrer to the evidence and motion for directed verdict, as well as the motion for judgment N.O.V.

█ This conclusion leads directly to the alleged error of the trial court in overruling the defendant's motion for new trial on the ground that the court erred in submitting the case against the hospital to the jury upon both the theories of "specific" negligence and res ipsa loquitor. Title 76 O.S.1981 § 21 provides a presumption of negligence in any action arising from the rendering of medical care if the patient sustains an injury proximately caused by an instrumentality solely within the control of the defendant where such injury does not ordinarily occur absent negligence on the part of the defendant. In *Middlebrook v. Imler, Tenny & Kugler M.D.'S, Inc.,* 713 P.2d 572 (Okl.1985), this Court held that, under the provisions of § 21, res ipsa loquitor and direct proof of negligence may be simultaneously submitted to the jury. The last injection, which precipitated plaintiff's injury, occurred in October of 1971. The actions here consolidated were filed in September, 1973. This case was tried in December of 1979, with the jury's verdict

being returned on December 11, 1979. The parties have submitted additions to their initial briefs referring the Court to *Middlebrook, supra.* The defendant contends that *Middlebrook, supra,* is inapplicable because the cause of action arose in 1971 and the action was filed in 1973. The general rule that statutes will be construed as to be prospective only does not apply to statutes affecting procedure. Such statutes apply to all actions falling within their terms, whether the right of action existed before or after the enactment. This rule is based upon the tenet that no one has a vested right in any particular mode of procedure for enforcement or defense of his rights. *Oklahoma Water Resources Board v. Central Oklahoma Master Conservancy Dist.,* 464 P.2d 748 (Okl.1969); *Gray v. Gray,* 459 P.2d 181 (Okl.1969); and *Phillips v. H A Marr Grocery Co.,* 295 P.2d 765 (Okl.1956). The statutory presumption of negligence created by 76 O.S. 1981 § 21 stands as a rule of evidence, just as the common law inference of negligence is an evidentiary rule. *Turney v. Anspaugh,* 581 P.2d 1301 (Okl.1978). The statutory presumption found in 76 O.S.1981 § 21 simply outlines a mode of procedure for the enforcement of a claim by establishing order of proof and, in instances of presentation of evidence, the burden. Rebuttable presumptions are regarded as mere procedural means of ordering presentation of proof and this is procedural and not substantive law, as it attaches certain procedural consequences as to the duty of production of other evidence by opposing counsel. *Rotramel v. Public Service Co.,* 546 P.2d 1015 (Okl.1975).

█ Inasmuch as the statute providing a presumption of negligence was in effect at the time this case came to trial and is a procedural provision, the trial court cannot be found to have erred in instructing the jury in accord with the provisions thereof. Under the views expressed in *Middlebrook, supra,* it is not error to allow the jury to be instructed upon both negligence and statutory presumption of negligence where the plaintiff has produced evidence of discrete negligence.

■ The defendant raises questions of failure to give requested instructions as reversible error. The first of these is the failure to instruct upon contributory negligence.[1] The defendant cites *Continental Oil Co. v. Ryan*, 392 P.2d 492 (Okl.1963), for the often cited principle that if there is any evidence of contributory negligence, or from which contributory negligence may be inferred or presumed, the issue must be left to the jury. The defendant points to various evidentiary matters to show facts sufficient to make an issue of contributory negligence for the jury. First, defendant points to the large amount of injected medications taken by the plaintiff contending plaintiff should have known that there was a danger arising from excessive use of medications. The fact remains, plaintiff had a valid prescription for these injections on demand or "when she felt she needed it". This defendant was brought to answer for improperly administering an injection which precipitated the injury, i.e., the injection was given subcutaneously, and not as required, intramuscularly. Whether or not the standing prescription was proper, or the plaintiff's use of injected painkillers was excessive, has no bearing upon the issue of whether the injection that caused this injury was delivered improperly or whether the improper administration thereof caused the injury. Secondly, the defendant contends that there is evidence that plaintiff was contributorily negligent because she flinched when those injections were administered to her thigh. However, even if the patient flinched when the needle was inserted, the hospital still remains answerable for improperly proceeding to evacuate the syringe into the plaintiff's body when the needle was not properly placed.

■ The defendant contends that the trial court erred in refusing to give an unavoidable accident instruction. The defendant hospital states the defense of unavoidable accident applies when there is evidence that neither party is negligent and all parties were using ordinary care, citing *Wofford v. Lewis*, 377 P.2d 37 (Okl.1963). The trial court did not err in refusing this instruction. Dr. Bryan's testimony showed that sterile water could cause tissue necrosis if it was given at a site already damaged from multiple injections, and, as defendant admits, this tends to demonstrate negligence as to defendant Cosby. Defendant refers to plaintiff's expert, Dr. Fite, to establish the unavoidable accident instruction was germane to the issues. However, that testimony merely states that the expert had never seen Atarax cause any injury, but it has enough capability to cause damage that the Physicians Desk Reference manual flatly states the compound is not to be given subcutaneously.

■ The defendant contends the trial court erred in refusing to give an instruction on independent intervening cause. The defendant cites no specific evidence to show an issue for the jury on this matter and states, if nothing else, the evidence of negligence of Dr. Cosby was sufficient to entitle the hospital to an instruction on independent intervening cause. The alleged negligence in prescribing the injections as requested does not rise to an intervening cause but is simply a condition which was acted upon by the improperly placed injection.

■ The defendant hospital predicates error arising out of the failure to give two instructions, one that the hospital is prohibited from practicing medicine and another that a corporation is considered as an individual and entitled to the same fair treatment an individual would receive. A review of the argument advancing these instructions discloses the prohibition from practicing medicine instruction was designed to inform the jury the hospital was not to be held responsible for the frequency of injections allowed under the doctor's prescription or his failure to properly diag-

---

1. It is noticed that this action was filed in 1973 and tried in December of 1979. The parties do not raise, and we do not consider, the applicability of 23 O.S.1981 §§ 13 and 14 which were effective July 1, 1979. 23 O.S.1981 § 13, Comparative Negligence, begins: "In all actions hereafter brought, whether arising before or after the effective date of this act, ..." See *Amoco Pipeline Co. v. Montgomery*, 487 F.Supp. 1268 (W.D.Okl.1980).

nose the condition which necessitated that prescription. The standard of care of the doctor and hospital are fully set forth in other instructions. As requested, the instruction is apparently unconnected to the issues and would be confusing to the jury. The second instruction amounts to a jury admonition to be as fair with the hospital defendant as it would to a person. No authority is cited to demonstrate reversible error occurred when these instructions were refused, and no reversible prejudicial error is perceived from refusal to so instruct, thus error on these points is refused.

■ The defendant hospital requested an instruction stating that where an injury may have occurred in more than one manner, one of which is negligent and one of which is not, it cannot be presumed that the injury arose in the manner giving rise to liability. The jury was instructed that proof of negligence must be by a preponderance of the evidence and that such negligence must have directly and proximately caused the plaintiff's injury. An omission of an instruction covered in other instructions does not constitute error. *Missouri-Kansas-Texas R Co. v. Harper*, 468 P.2d 1014 (Okl.1970). For the same reason, defendant's proposed error of the trial court in giving its instruction on life expectancy is refused. The instruction given succinctly notifies the jury of plaintiff's life expectancy, the fact she may or may not live that long or may live longer, and further that the life expectancy table figure is not to be taken as proof she will live that long. The defendant's requested instruction on life expectancy was given in substance and no error is found in the court's rejection of defendant's requested instruction.

The defendant hospital also raises as error the trial court's refusal to give an instruction stating that any damage award given to the plaintiff was not taxable under the Internal Revenue (income tax) Code. This Court discussed this point in *Middlebrook, supra*. There we held that the court committed no error when it failed to give such an instruction on its own motion inasmuch as the vagueries of the tax code

was not a fundamental issue in the cause. Here, however, defendant requested an instruction and the trial court refused to issue that instruction.

The necessity for an instruction as requested is predicated upon the assumption that the jury will fail to follow the balance of the instructions they are charged with. The jury is generally, as in this case, instructed that the instructions they are given contain all the law to be applied in the case and the rules by which they are to weigh the evidence and determine the facts in issue. Additionally, the jury is instructed on the factors to be considered in figuring the amount in damages that will compensate a plaintiff for the damages incurred. The assumption that such an instruction is necessary requires that the jury fail to follow the instructions given as well as acting upon their own to increase damages because of an erroneous view of the tax law. One justification for the giving of the requested instruction is the fact that the juries of today are increasingly conscious of income tax and its impact on this society. The necessity of the tax instruction can only be demonstrated if the jury is assumed to ignore their instruction that all the law to be applied to the cause is contained in the instructions and will consider matters outside their instructions. It must be also assumed that the jury is tax conscious enough to compensate for the perceived tax liability but not so conscious of taxation law to know the award is not taxable. The necessity for such an instruction rests on narrow grounds, requiring assumptions which are contrary to the basic machinery of our system of jury trial.

■ The refusal to give instructions requested is not error where the issue was substantially covered by the general instructions. *Linn v. Barnett's Inc.*, 503 P.2d 1276 (Okl.1972); *St. Louis-San Francisco Ry. Co. v. Fox*, 359 P.2d 710, 83 A.L.R.2d 1318 (Okl.1961); and *Mistletoe Express Service, Inc. v. Culp*, 353 P.2d 9 (Okl.1960). Without the requested instruction the jury in this cause had before them all the law necessary to arrive at a correct damage figure. The trial court did not

commit reversible error in refusing the instruction. Any prejudice suffered by failing to so instruct is simply conjectural.

Some jurisdictions have refused to mandate that an instruction on taxability is in all cases necessary or improper, and have held that the trial court must exercise its discretion in accord with the evidence and the circumstances of the case. *Gulf Offshore Co., etc. v. Mobil Oil Corp.*, 628 S.W.2d 171 (Tex.App.1982), cert. denied 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982). In *Griffin v. General Motors Corporation*, 380 Mass. 362, 403 N.E.2d 402, 16 A.L.R.4th 579 (Mass.1980), the Court addressed some of the factors acting upon the exercise of that discretion:

> "Where there is nothing in the evidence bearing on taxes, and the lawyers do not mention the subject in front of the jury, no instruction on the subject may be needed. If any instruction on the subject is to be given in such cases, it may be sufficient to tell the jury that their verdict is to be based on the evidence, that there is no evidence before them as to taxes, and that taxes are therefore none of their business. Where the subject of income taxes on the amount of the verdict has been brought to the attention of the jury in a serious way, the judge must exercise his best judgment and discretion, and frank disclosure that the amount of the verdict is not subject to federal or state income taxation may be the better course.

Although the Court holds that failure to give the taxation instruction requested is not reversible error it is recognized that under certain circumstances the trial judge may determine the best course is to issue such an instruction. This opinion is not intended to be recognized as holding the issuance of such an instruction would be error.

 The defendant hospital contends reversible error taints this cause because the jury had with them a letter marked plaintiff's exhibit number 16 and it was taken into the jury room during deliberations. The exhibit was not admitted into evidence. This letter was from the Executive Director of The Board of Nurse Registration and Nursing Education and it contains the information that Clarice Rhodes was not eligible to be licensed in the state of Oklahoma. Ms. Rhodes was the individual employed by the defendant who gave the plaintiff the injection plaintiff alleged precipitated the injury. This letter states a temporary license was issued effective April 2, 1971 to July 2, 1971. As noted previously plaintiff alleged the injury occurred from an injection given on October 15, 1971. The same information was related to the jury by testimony of the Executive Director for Administrative Services of the Nursing Board. The defendant contends these exhibits were improperly admitted as either the result of surprise tactics or on the basis of irrelevancy. The defendant's brief contains no authority for reversal upon these grounds. It is noted that plaintiff did notify the defendant that someone from the Nursing Board could be called to testify that Ms. Rhodes was not licensed at the time she gave the injection to plaintiff. The record bears out the fact that the pretrial order specifies a witness from the Nursing Board or documentary evidence. A review of the transcript makes it readily apparent that counsel on both sides of this action knew for well over a year that Ms. Rhodes was not licensed in Oklahoma. Further, Ms. Rhodes testified in this trial she was licensed and that, if the Board records did not reflect she was licensed, they were wrong. The pleadings raise the issue of the hospital's failure to employ properly trained personnel. The trial court admitted the evidence of Ms. Priddy on the basis of a prior inconsistent statement and on the basis that surprise was not shown by virtue of the issue being raised at pretrial. In the absence of authority demonstrating error in admission of this evidence the allegation of error is refused. Apparently the information was relevant to plaintiff's allegation that defendant's agents were not properly trained. Further the evidence offered bore directly upon the credibility of the agent administering the injection. Additionally, the allegation that this constituted surprise evidence is refuted entirely by the record.

Assignments of error presented in the brief, unsupported by convincing argument or authority, will not be considered on appeal unless it is apparent without further research that they are well taken. *Paris Bank of Texas v. Custer,* 681 P.2d 71 (Okl. 1984) and *Bradley v. McCabe,* 438 P.2d 468 (Okl.1967).

The defendant, Miami Baptist Hospital, proposes three objections to the interest awarded in this action. The first being that 12 O.S.Supp.1979 § 727 is unconstitutional and no prejudgment interest or post-judgment interest should be allowed. In the main, defendant contends that prejudgment interest on personal injury cases is an attempt to grant interest on an unliquidated amount, stating most states have indicated that prejudgment interest on unliquidated amounts is improper, citing 47 C.J.S. §§ 19 and 20. However, prejudgment interest is covered in 47 C.J.S. § 49. Prejudgment interest compensates the plaintiff for the loss of use of his compensatory damages from the time the cause of action accrued until the date of judgment; money to which the plaintiff is entitled. *West v. Harris,* 573 F.2d 873 (C.A. 5th Cir.1978), cert. denied 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635. Additionally, such rules foster settlement of meritorious claims and stand as an attempt to relieve congestion in the court system. It is noted that prejudgment interest has been held constitutional under Oklahoma law, *Nichols v. T.I.M.E.—D.C., Inc.,* 373 F.Supp. 811 (E.D.Okl.1973), as measured against tenets of the due process clause of the federal constitution. In addition, such statutes have been upheld in other jurisdictions when measured against the due process clause and the equal protection clause. *Roy v. Star Chopper Co., Inc.,* 584 F.2d 1124 (C.A. 1st Cir.1978), cert. denied *Star Chopper* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466. Appellant's first allegation of constitutional infirmity is unsupported by any authority other than the simple contention that the general rule is that interest on unliquidated amounts under dispute is improper. Cursory examination discloses statutory authority has been upheld against these challenges, and our research

has disclosed *no* authority to support the asserted constitutional infirmity. As noted previously, assignments of error presented by counsel in the brief, unsupported by convincing authority, will not be considered on appeal when it is not apparent without further research that they are well taken. *Paris Bank of Texas v. Custer, supra.*

It is also contended that the court erred in failing to instruct the jury of the existence of the interest statute, and that failure is prejudicial because the jury would have awarded less in the face of such knowledge. Interest is not an element of damages in a personal injury action. *Schwartz v. Piper Aircraft Corp.,* 90 Mich.App. 324, 282 N.W.2d 306 (1979); *In re Air Crash Disaster Near Chicago, Ill., etc.,* 644 F.2d 633 (C.A. 7th Cir.1981). The fact that interest is not an element of damages under Oklahoma law is discoverable from the statutory scheme of 12 O.S.Supp. 1979 § 727(2) in that that section specifies when a verdict for damages by reason of personal injuries is accepted by the trial court, the court shall then add interest in rendering judgment. Clearly then, the legislature did not specifically classify or imply that interest was an element of damages. *Schwartz v. Piper Aircraft Corp., supra.* Defendant's contention that had the jury been instructed interest would be added to the verdict, it would have awarded less money assumes the jury went outside the issues of the case and ignored the instructions. The assumption is unjustified. The court is required to presume that the jury followed the instructions and considered plaintiff's damages in light thereof and ordered verdict in keeping therewith. *Booth Tank Co. v. Symes,* 394 P.2d 493 (Okl.1964). When the instructions correctly state damage elements it will not be presumed that the jury considered matters other than those submitted. *Ft. Smith & W.R. Co. v. Moore,* 66 Okl. 322, 169 P. 904 (1917).

The trial court followed the statute in adding interest after the verdict was rendered, and to submit the issue to the jury as an element of damages would not have comported with the statutory mandate.

The defendant hospital contends that the equal protection clause is offended by the distinction between governmental entities and private parties, in that governmental entities are assessed interest on judgments against them at a lower rate of 6% from the date the suit was commenced rather than 10%.

■ First, the defendant asks that the distinction between a citizen and the state be determined a suspect class, initiating a strict scrutiny examination thereof. Such a contention is far outside the traditional bounds of constitutional analysis. Equal protection analysis requires strict scrutiny of a legislative classification only when the categorization impermissibly interferes with the exercise of a fundamental right, a right of a uniquely private nature such as the right to vote, the right of interstate travel, and first amendment rights, or a classification that operates to the peculiar disadvantage of a suspect class: alienage, race, or ancestry. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Obviously, the Court is not faced with a suspect classification such as would require strict scrutiny of the legislative classification.

■ In the absence of a classification requiring strict scrutiny, economic legislation must be upheld against an equal protection attack when the legislative means utilized are rationally related to a legimate governmental purpose; indeed, this type of legislation carries with it a presumption of rationality that could be overcome only by a clear showing of arbitrariness and irrationality. *Hodel v. Indiana*, 452 U.S. 314, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981). The rational basis standard of review is relatively relaxed, recognizing the judiciary's awareness that the drawing of lines that create distinctions is a peculiarly legislative task, and an unavoidable one, at that. *Massachusetts Board of Retirement v. Murgia, supra.* The distinction drawn by the statute is between the government and its citizens. Lower interest attaches to prejudgment against the state to further the legitimate purpose of preserving the public fisc. Interest on a judgment against an individual or corporation is paid only by the judgment debtor while interest against a governmental unit must be borne by all taxpayers of the governmental unit. There can be no question but that the purpose to be served by the classification is legitimate and the means drawn by the legislature to achieve it are rationally related to the legitimate state end. Classifications are to be set aside only if they are based solely on reasons totally unrelated to the pursuit of the state goals and only if no grounds can be conceived to justify them. *Clements v. Fashing*, 457 U.S. 957, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982), rehearing denied 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed.2d 1404. No equal protection violation exists in the differentiation between citizens and the state in 12 O.S.Supp.1979 § 727.

In relation to the interest upon the judgment and verdict established under 12 O.S. Supp.1979 § 727(2), the defendant hospital next contends that the statute was erroneously held by the trial court to be retroactive, and thus interest properly should have been assessed under 12 O.S.1971 § 727. The defendant cites 25 C.J.S. Damages § 92(1) p. 986 for the premise that interest statutes are prospective only. This section is not applicable on its face as it refers to "[C]ases where interest is allowed as damages, ..." Under our statute, as discussed, the interest assessed is not assessed as damages. This Court has specifically held that § 727 directs assessment of interest on judgment from the time suit is commenced to the date of the verdict notwithstanding the fact that suit was commenced prior to the effective date of the act on the basis that the statute is procedural rather than substantive. *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48, 84 A.L.R.3d 1199 (Okl.1976) and *Benson v. Blair*, 515 P.2d 1363 (Okl.1973). Thus prejudgment interest is to be assessed at the rate provided by statute at the time of the verdict and the trial court did not err in so affixing that interest to the judgment.

■ In a similar vein the defendant hospital objects to the assessment of postjudgment interest at the rate of 12% specified in the 1979 amendment to § 727(2) to

the entire judgment. In this regard defendant is referring to post-judgment interest upon both the verdict for damages arising from injury to the person and prejudgment interest thereon included in the judgment rendered by the trial court. This Court has specifically denied this claimed error. *Messler v. Simmons Gun Specialties, Inc.,* 687 P.2d 121 (Okl.1984); *Walker v. St. Louis—San Francisco Ry. Co.,* 671 P.2d 672 (Okl.1983); *Holland v. Dolese Co.,* 643 P.2d 317 (Okl.1982). The trial court correctly allowed post-judgment interest upon the entire judgment which included the amount of the verdict and prejudgment interest, and the offered error is refused.

In the last of the interest related propositions of error, the appellant contends the trial court erred in failing to reduce the amount of prejudgment interest under its inherent equitable powers. It must be noted that the mandate of the legislature found in 12 O.S.Supp.1979 § 727 states "[all] judgments of courts of record *shall* bear interest ..." (emphasis added). Subsection 2 states "... the court in rendering judgment *shall* add interest on said verdict at the rate of ten percent (10%) per year from the date the suit was commenced to the date of verdict, ..." (emphasis added). The word shall is uniformly held to be an imperative command in this jurisdiction. *Davis v. Davis,* 708 P.2d 1102 (Okl.1985):

> "The term 'shall' is a word of command or mandate, with a compulsory and peremptory meaning. It denotes exclusion of discretion and signifies an enforceable duty, especially when addressed to public officials...." 708 P.2d 1102 at 1107, F.N. 23.

The trial court was commanded by legislative mandate to add prejudgment interest to the verdict. As a general rule equity follows the law and where a party's rights are defined by statute, equity is without authority to modify or unsettle those rights. *Polk v. Oklahoma Alcoholic Beverage Control Board,* 420 P.2d 520 (Okl.1966). As stated early on, in this jurisdiction, no court is ever justified in invoking the maxim of equity for the purpose of destroying legal rights. *York v. Trigg,* 87 Okl. 214, 209 P. 417 (1922). Obviously then the trial court did not err in refusing to reduce the award of prejudgment interest from that specified in the statute.

The appellant contends that the damages were excessive and resulted from passion and prejudice requiring either a remittitur or a new trial. A review of the record discloses plaintiff lost the skin from her thigh and the underlying subcutaneous tissue in an area roughtly 2½″ by 7″. This wound's treatment required that it remain open for a period of multiple weeks before being closed with a skin graft. The area is permanently numb and the scar is obviously disfiguring. Before a verdict of a jury will be set aside as excessive it must appear that the verdict is so excessive as to strike mankind, at first blush, as being beyond all measure unreasonable and outrageous as such as manifestly shows that the jury was activated by passion and prejudice or corruption. *Austin Bridge Co. v. Christian,* 446 P.2d 46 (Okl.1968). Under this standard of review the verdict of the jury is not subject to remittitur or vacation for a new trial. The trial court did not err in refusing to disturb the verdict.

Appellant's last error arises out of the severance of defendant's counter-claim for unpaid medical bills. This claim arises from treatment of the plaintiff after the injury occurred. No contention is raised on appeal that this severance was improper. Appellant claims that there was no final disposition of all the issues between the parties and thus the trial court erred in entering judgment upon the jury verdict. The argument builds upon the statutory declaration that "[a] judgment is the final determination of the rights of the parties in an action", 12 O.S.1981 § 681, and the precept that there can be but one final judgment in an action. *J.A. Tobin Const. Co. v. Grandview Bank,* 424 P.2d 81 (Okl. 1966). *Loy v. McDowell,* 85 Okl. 286, 205 P. 1089 (1922) states a test of a final judgment is whether or not the court's jurisdiction has been exhausted *as to matters decided* and there can be but one final judgment in an action. At the time the counter-claim was severed the trial of the action

consisted of only the tort claim. The judgment on the jury verdict finally determined and exhausted the court's jurisdiction as to those issues in the action, or trial, then pending. The judgment was final as to those matters decided. Severance for trial circumscribed the matters considered in that action. The trial court did not err in issuing judgment on the jury verdict. Appellant's argument does raise equitable considerations which the Court determines would be fairly resolved by staying execution of the judgment here affirmed until such time as the defendant has judgment, if any, for the medical services which comprise the counterclaim. If defendant obtains a judgment on the counterclaim it is hereby ordered that execution on both judgments shall issue simultaneously.

There being no reversible error in the judgment demonstrated, the judgment on the jury verdict is AFFIRMED, and it is ordered that execution on that judgment be and hereby is ordered stayed pending resolution of the counterclaim.

DOOLIN, C.J., and HODGES, LAVENDER, KAUGER, ALMA WILSON and SUMMERS, JJ., concur.

KAUGER, J., files a concurring opinion in which DOOLIN, C.J., and HODGES and ALMA WILSON, JJ., join.

OPALA, J., concurs in result (by separate opinion).

SIMMS, J., dissents (by separate opinion).

KAUGER, Justice, concurring, with whom DOOLIN, Chief Justice, HODGES and ALMA WILSON, Justices, join:

Although I concur with the majority opinion, it has failed to answer one of the questions squarely presented by the appellant, The Baptist General Convention of Oklahoma, d/b/a/, Miami Baptist Hospital. As the hospital puts it, the question now before this Court is whether 12 O.S.Supp. 1979 § 727 has retroactive, or prospective effect. The hospital argues that § 727 must be applied prospectively—the hospital is right. Apparently, because of the pending counter claim, the majority has left this issue somewhat hazy. Because, in my opinion, the prejudgment and postjudgment interest rates change at the effective date of each amendment to the rate setting statutes, and because both prejudgment and postjudgment interest rates have widely fluctuated since 1971,[1] we should address this issue now.

## THE INTEREST RATE ON ALL EXISTING JUDGMENTS IS CHANGED PROSPECTIVELY FROM THE EFFECTIVE DATE OF THE AMENDMENT TO THE STATUTE AUTHORIZING THE RATE

The question of whether a state statute which changes the applicable rate of interest on judgments or verdicts should be applied retroactively, prospectively, or from the effective date of its modification has been a fruitful field for litigation.[2] In several jurisdictions, in the absence of no clearly contrary legislative intent, amendments to interest statutes are applied prospectively. The majority, however, have espoused the view that because interest in tort actions is a statutory obligation, with the right to receive either prejudgment or postjudgment interest dependent on legislative prescription, interest rates on judgments in personal injury actions should reflect statutory changes which occur during the pendency of the obligation to pay the judgment. This rationale is premised on the notion that a claim for damages arising from a personal injury action is unliquidated in the sense that the defendant cannot know, prior to judgment, the precise amount he/she may be required to pay. Because claims for damages in tort actions are unliquidated, at common law interest

1. See Appendix A.

2. See Annot., "Retrospective Application and Effect of State Statute or Rule Allowing Interest or Changing Rate of Interest on Judgments or Verdicts," 41 A.L.R. 4th 694 (1985), for citation of cases.

was not awarded as a part of damages.[3] The more recent trend is a hybrid retrospective/prospective application of changes in the interest rate based on the effective date of the applicable rate-changing statute.

## A.

### IN THE PAST, INTEREST RATES HAVE BEEN BASED ON WHETHER THE RIGHT TO RECEIVE INTEREST ON THE JUDGMENT IS A VESTED RIGHT OR MERELY A MINISTERIAL MATHEMATICAL MODE OF PROCEDURE.

There are four leading cases in Oklahoma which have discussed the problem of the rate of interest to be impressed on a judgment after the statute setting the rate has been amended: *Timmons v. Royal Globe Ins. Co.*, 713 P.2d 589, 594 (Okl. 1985); *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48, 63 (Okl.1976); *Benson v. Blair*, 515 P.2d 1363, 1365 (Okl.1973); and *Sunray DX Oil Co. v. Great Lakes Carbon Corp.*, 476 P.2d 329, 346 (Okl.1970). These cases reached inconsistent results perhaps because *Timmons* and *Sunray* were cases arising from contract while *Fields* and *Benson* each involved actions for personal injuries.

In *Timmons v. Royal Globe Insurance Co.*, 713 P.2d 589 (Okl.1985), damages were awarded against the insurer for its bad faith refusal to pay a valid claim. One of the issues on appeal was whether the prejudgment and postjudgment interest rates in effect at the time of judgment could be varied by subsequent legislative amendments. The *Timmons* court held that the rate, until the date of payment, was the one in effect at the time of judgment because Royal Globe was vested with a con-

stitutionally-shielded accrued or vested right in the adjudicated obligation.[4] *Timmons* cited *Sunray DX Oil Co. v. Great Lakes Carbon Corp.*, 476 P.2d 329, 346 (Okl.1970), for the proposition that subsequent changes in the statutory rate should not vary the rate of interest to be paid on a judgment.

On rehearing in *Sunray*, the question was raised concerning whether the postjudgment interest rate on a judgment for breach of a written contract was changed by a subsequent amendment to the rate-setting statute. The *Sunray* court held that the interest rate on the pre-existing judgment should not be changed, because to do so would apply the statute retrospectively. The court applied the rule that a statute should operate prospectively in the absence of clear legislative intent or contrary implication.[5] Although this is an established rule of statutory construction, an exception for statutes involving modes of procedure is also recognized. An Oklahoma example is *Benson v. Blair*, 515 P.2d 1363, 1365 (Okl.1973).

*Benson* also focused on the application of 12 O.S. 1971 § 727, although prejudgment rather than postjudgment interest was involved. There the court found that the legislative intent expressed or implied by the language used required retrospective application of the interest rate.[6] *Benson* adopted the rationale expressed in the leading postjudgment interest case, *Foster v. Quigley*, 179 A.2d 494–95 (R.I.1962),[7] that interest on a judgment in an action for damages to person or property is not of the substance of the right of action but attaches to the judgment after the substantive right has been adjudicated. The *Benson* court noted the similarity to the imposition of costs, and held that the legislative directive to the trial court to add interest to

---

3. *Sylvania Electric Products, Inc. v. Barker*, 228 F.2d 842, 851 (1st Cir.1955), *cert. den'd* 350 U.S. 988, 76 S.Ct. 475, 100 L.Ed. 854 (1956); *Sisney v. Smalley*, 690 P.2d 1048, 1050 (Okl.1984).

4. *Timmons v. Royal Globe Ins. Co.*, 713 P.2d 589, 594 (Okl.1985).

5. *Sunray DX Oil Co. v. Great Lakes Carbon Corp.*, 476 P.2d 329, 346 (Okl.1970).

6. *Benson v. Blair*, 515 P.2d 1363, 1365 (Okl. 1973).

7. Most jurisdictions considering this question have adopted the *Quigley* doctrine. See *Holmes v. Bateson*, 434 F.Supp. 1365, 1391 (D.R.I.1977), for citation of Rhode Island post *Foster v. Quigley* cases.

the judgment was merely a ministeral mode of procedure.[8]

The *Timmons* court, after finding there was a vested right in the amount of interest impressed upon an adjudicated obligation, distinguished *Benson* on the grounds that it failed to address the question of whether the challenged interest was a vested or accrued right. Nonetheless, *Benson* held that the addition of interest was a procedural duty of the trial court *not* a substantive right.

### B.

### BOTH PREJUDGMENT AND POST-JUDGMENT INTEREST IN ACTIONS FOR PERSONAL INJURIES ARE STATUTORY OBLIGATIONS

Other than the procedural/substantive distinction, whether to apply interest rate changes to pre-existing judgments was often analyzed in many older cases by determining whether interest on judgments was a matter of contract or an obligation imposed by statute. If, as in *Benson*, a court takes the latter view, then the rate is subject to later modification by statute.[9] On the other hand, if the interest on a judgment is considered a contractual obligation, the rate is a vested obligation which cannot be subjected to later modification. The contractual view has fallen into disuse, and has been criticized because of the major differences between contracts and judgments.[10] If we decide, as do the majority of jurisdictions, that interest on a judgment for damages to person or property is not a

substantial right but exclusively an incident attached thereto by legislative fiat after the right has been adjudicated,[11] neither enlarging nor impairing substantial rights, but rather prescribing the methods and procedures of enforcement,[12] interest on the judgment can be changed at any time.[13] Because at common law interest was not an element of damages recoverable on actions of tort for personal injuries,[14] but is purely a creature of statute, a historical review is essential.

Arguments are often offered that the new interest rate should not apply to unsatisfied judgments entered before the effective date of the statutory change because a judgment is a contract or is in the nature of a contract with the rights and liabilities of the parties fixed at the time judgment is entered. The United States Supreme Court disposed of this argument almost a century ago in *Morley v. Lake Shore & Michigan Southern Ry. Co.*, 146 U.S. 162, 169–70, 13 S.Ct. 54, 56–57, 36 L.Ed. 925, 929 (1892). The Court, in its discussion of a New York statute similar to the one here, held that the right to interest on a judgment for personal injuries is a matter of legislative discretion not of contract pointing out the absence of essential characteristics of a contract—a meeting of the minds, consideration, mutuality, and assent of the parties. The Court discussed this issue at length:

*"After the cause of action, whether a tort or a broken contract, not itself prescribing interest till payment, shall have been merged into a judgment, whether interest shall accrue upon the*

---

8. See also *Ballog v. Knight Newspapers, Inc.*, 381 Mich. 527, 164 N.W.2d 19, 23 (1969).

9. *McBride v. Superior Ct. of Maricopa County*, 130 Ariz. 193, 635 P.2d 178–79 (1981).

10. The criticism is that contracts create a right in one party and a duty in another, while a judgment does not personally compel the debtor to act. Also, unlike a contract, a judgment does not demand the free assent of the parties, and by way of enforcement, failure to fulfill a contractual obligation cannot lead to jail, while refusal to comply with a judgment can be so punished. See Note, "Creditors Remedies: Applying a Change in the Statutory Rate of Interest to Preexisting Judgments in Arizona," 25 Ariz. L.Rev. 515, 520 (1983).

11. *Foster v. Quigley*, 179 A.2d 494–95 (R.I.1962); see also *Ballog v. Knight Newspapers, Inc.*, 381 Mich. 527, 164 N.W.2d 19, 23 (1969).

12. See *Holmes v. Bateson*, 434 F.Supp. 1365, 1391 (D.R.I.1977) for citation of Rhode Island post *Foster v. Quigley* cases.

13. *O'Brien v. Young*, 47 Amer. R. 64, 95 N.Y. 428, 434 (App.1884).

14. *Sisney v. Smalley*, 690 P.2d 1048, 1051 (Okl. 1984); *Batchelder v. Tweedie*, 294 A.2d 443–44 (Me.1972); *Cochran v. Boston*, 211 Mass. 171, 97 N.E. 1100–01 (1912); *Atlanta & B. Air Line Ry. v. Brown*, 158 Ala. 607, 48 So. 73, 77 (1908).

*judgment is a matter not of contract between the parties, but of legislative discretion,* which is free, so far as the constitution of the United States is concerned, to provide for interest as a penalty or liquidated damages for the nonpayment of the judgment, or not to do so. When such provision is made by statute, the owner of the judgment is, of course, entitled to the interest so prescribed until payment is received, or until the state shall, in the exercise of its discretion, declare that such interest shall be changed or cease to accrue. Should the statutory damages for nonpayment of a judgment be determined by a state, either in whole or in part, the owner of a judgment will be entitled to receive and have a vested right in the damages which shall have accrued up to the date of the legislative change; but after that time his rights as to interest as damages are, as when he first obtained his judgment, just what the legislature chooses to declare. He has no contract whatever on the subject with the defendant in the judgment, and his right is to receive, and the defendant's obligation is to pay, as damages, just what the state chooses to prescribe." (Emphasis supplied)

The right of a judgment creditor to interest on a judgment is a matter of legislative grace granted to compensate the judgment creditor for the damages sustained by nonpayment of the judgment. Here, just as the judgment creditor has no right to interest except that which is legislatively decreed, the judgment debtor has no right to a limitation of the interest rate to be applied in the future except for that ordered by the legislature. Should the legislature determine that it is prudent to *raise* or *lower*[15] the interest rate from time to time either to compensate fairly judgment creditors, to conform with current economic standards, or to expedite litigation, the new rate should apply from the effective date of the change to all outstanding judgments.

This construction is a hybrid application because it is actually neither retrospective nor prospective. A retroactive application would apply the new rate to all outstanding judgments running from the date of the judgment even if it were entered before the effective date of the new rate. This construction is a prospective application of the new rate, e.g., the new rate applies after the effective date to all outstanding judgments—before that date interest accrues at the old rates.[16] Where the language of a statute is plain and the meaning clear, the statute must be enforced as written.[17] Here, the language of the statute contains no exception for actions accruing prior to the effective date of the statute.

Although there is arguably a valid rationale for differentiating between interest on contracts and interest on actions for damages, none of the Oklahoma interest statutes make such a distinction except when the rate of interest is specified in the contract. The Oklahoma statute, 12 O.S.Supp. 1986 § 727(A)(1), and its predecessors have always provided that if the rate of interest is specified in the contract, the rate is applicable to the judgment debt and that it will be so specified in the journal entry of judgment. Perhaps this is so because of the language of *Morley* construing a similar New York statute.[18]

15. In *Swanson v. Flynn,* 75 N.D. 597, 31 N.W.2d 320, 323 (1948), the North Dakota Supreme Court approved the reduction of the rate of interest on judgments previously obtained finding no impairment of contract.

16. *Mayor and City Council of Baltimore v. Kelso Corp.,* 294 Md. 267, 449 A.2d 406, 410 (1982).

17. *Matter of Phillips Petroleum Co.,* 652 P.2d 283, 285 (1982).

18. New York Laws 1879, chap. 538, p. 598: "§ 1. The rate of interest upon the loan or forbearance of any money, goods, or things in action shall be six dollars upon one hundred dollars for one year, and after that rate for a greater or less sum, or for a longer or shorter time; but nothing herein contained shall be so construed as to in any way affect any contract or obligation made before the passage of this Act."
New York Laws 1877, chap. 417, pp. 468, 477: "§ 1211. A judgment for a sum of money, rendered in a court of record, or not of record, or a judgment rendered in a court of record directing the payment of money, bears interest from the time when it is entered."

Nor do I find support in the Oklahoma Constitution [19] for the proposition that prejudgment and postjudgment interest on an action for damages to person or property are vested rights because this Court held in *Benson* that interest calculation was procedural. Procedural changes affect the remedy rather than the right,[20] and there is no vested right in any particular mode of procedure. In the absence of an expression of contrary intent, a procedural statute applies equally to all actions within its purview, those accruing both before and after the statutory enactment.[21]

Generally, because a constitution is not the beginning of law in the state, it assumes the existence of a well understood system of law which is to remain in force. Accordingly, a constitution is to be construed in the light of common law. The framers are presumed to have intended no change from nor innovation on the common law than appears from reasonable implication, or from an express declaration by the Constitutional framers themselves. In many jurisdictions the rule is that statutes in derogation thereof are to be strictly construed. Since 1910, the common law, as modified by constitutional and statutory law, judicial decisions, and the condition and wants of the people, has remained in force in aid of the general statutes of Oklahoma. However, the rule that statutes in derogation are to be strictly construed is inapplicable to the laws of this state—they are to be construed liberally in order to achieve their objectives and to promote justice.[22]

Here, because the framers had the benefit of the New York statute and of the United States Supreme Court's decision in *Morley,* I must conclude that the right of the judgment creditor to receive, and the obligation of the judgment debtor to pay, interest upon a judgment does not rest in contract. Instead it is an obligation imposed by law with the right to receive interest entirely contingent upon legislative prescription. Because prejudgment and postjudgment interest are in the nature of statutory damages where the interest is not specifically provided by contractual agreement, a state without impairing the obligation of contracts or interfering with vested or accrued rights, may legislate to increase or reduce the rate of interest on judgments previously obtained in its courts.[23]

Regardless of the analysis used—substantive/procedural or contractual/statutory—the majority of jurisdictions allow the rates on pre-existing judgments to be changed as the new statutory rates become effective.[24] The underlying policy for this

---

**19.** The Okla. Const. art. 5, § 54 provides:
"The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued right, or penalty incurred or proceedings begun by virtue of such repealed statute."

**20.** *Trinity Broadcasting Co. v. Leeco Oil Co.,* 692 P.2d 1364, 1367 (Okl.1984).

**21.** *Oklahoma Water Resources Bd. v. Central Okla. Master Conservancy Dist.,* 464 P.2d 748, 756 (Okl.1969); *Shelby-Downard Asphalt Co. v. Engart,* 67 Okl. 237, 170 P. 708–09 (1918).

**22.** Title 12 O.S.1981 § 2 provides:
"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object."

Title 25 O.S.1981 § 29 provides:
"The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this state, which are to be liberally construed with a view to effect their objects and to promote justice."
*State v. Criqui,* 105 Kan. 695, 185 P. 1063, 1065 (1919); see also I Cooley, "Constitutional Limitations," Ch. 4, p. 133 (8th ed. 1927).

**23.** See *Benson v. Blair,* 515 P.2d 1363, 1365 (Okl.1973), followed in *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48, 63 (Okl.1976), the Oklahoma Supreme Court held the statute to be procedural not affecting a substantive right clothed with the indicia of damages. *Missouri & A.L. & M. Co. v. Sebastian County,* 249 U.S. 170, 172, 39 S.Ct. 202, 63 L.Ed. 538, 542 (1919); *Wyoming Natl. Bank v. Brown,* 7 Wyo. 494, 53 P. 291 (1898).

**24.** States which apply the amended statutory rate to pre-existing judgments include Arkansas, Florida, Georgia, Idaho, Illinois, Indiana, Ken-

position was discussed in *Shook & Fletcher Insulation v. Central Rigging & Contracting Corp.*, 684 F.2d 1383, 1388 (11th Cir.1982). In *Shook,* as here, the applicable statute did not address specifically what interest rate should apply to judgments existing prior to an amendment of the statutory rate. The language of the Georgia Code § 57–108 (1980) was the same as the Oklahoma statute. It provided: "All judgments ... shall bear interest ... at the rate of twelve per cent per year." The court interpreted this language literally, stating:

"The purpose for increasing the rate of interest accruing to judgments was to acknowledge an increase in interest rates in general and to bring the rate of interest on judgments into parity with other comparable market rates of interest. If the legal rate of interest for judgments remains significantly lower than the prevailing market rates of interest, then judgment-debtors would have a strong incentive to delay paying their judgments as long as possible in order to capitalize on this difference. Judgment-creditors, in turn, would increasingly be compelled to resort to levying, attachment, and other judicial remedies to enforce their judgments. This windfall to judgment-debtors and burden on judgment-creditors and the state courts are a state of affairs that Georgia could reasonably seek to avoid. These policy concerns apply with equal force for all judgments outstanding as of July 1, 1980, [the effective date of the amendment] as well as for new judgments entered after July 1, 1980".[25]

The same result was reached in *Noe v. Chicago*, 56 Ill.2d 346, 307 N.E.2d 376, 379 (1974). The *Noe* Court determined: that the new rate should apply prospectively to pre-existing judgments; that this application was not, in any sense, a retroactive application of the statute; and, that changing the interest rate on a judgment does not interfere with rights already accrued or vested.[26] Another case in which this reasoning was adopted is *McBride v. Superior Court of Maricopa County*, 130 Ariz. 193, 635 P.2d 178–79 (1981). In rebutting the argument that changing the rate after the date of judgment was a retroactive application of the statute, the *McBride* court said, "The statute at the time of the judgment provided for 6% interest; the 10% rate did not take effect until 14 December 1979 and was effective only after that date. It was not retroactive but prospective after the effective date of the statute."[27]

In the final analysis, we need not find that the interest on the judgments for breach of an oral contract is merely procedural or that it is not contractual. The most appropriate construction is that the new rate is not a retrospective application of the statute interfering with vested or accrued rights but that it is, in fact, pro-

---

tucky, Maryland, Massachusetts, Missouri, Montana, New York, North Dakota, South Carolina, South Dakota, Wisconsin and Wyoming. *Shook & Fletcher Insulation v. Central Rigging & Contracting Corp.,* 684 F.2d 1383, 1388 (11th Cir. 1982); *Southeastern Freight Lines v. Michelin Tire Corp,* 279 S.C. 174, 303 S.E.2d 860–61 (1983); *Baltimore v. Kelso Corp.,* 294 Md. 267, 449 A.2d 406, 409 (1982); *Associated Developers, Inc. v. Brookings,* 305 N.W.2d 848–49 (S.D.1981); *Indiana Dept. of Revenue v. Glendale-Glenbrook Associates,* 429 N.E.2d 217, 220 (Ind.1981); *Senn v. Commerce-Manchester Bank,* 603 S.W.2d 551, 554 (Mo.1980); *Ridge v. Ridge,* 572 S.W.2d 859, 861 (Ky.1978); *Noe v. Chicago,* 56 Ill.2d 346, 307 N.E.2d 376, 379 (1974); *Swanson v. Flynn,* 75 N.D. 597, 31 N.W.2d 320, 323 (1948); *People ex rel. Emigrant Industrial Sav. Bank v. Sexton,* 284 N.Y. 57, 29 N.E.2d 469, 471 (1940); *Idaho Gold Dredging Corp. v. Boise Payette Lumber Co.,* 54 Idaho 765, 37 P.2d 407, 412 (1934); *Stanford v. Coram,* 28 Mont. 288, 72 P. 655–56 (1903); *Read v. Mississippi County,* 69 Ark. 365, 63 S.W. 807–08 (1901) aff'd 188 U.S. 739, 23 S.Ct. 849, 47 L.Ed. 677 (1903); *Wyoming Natl. Bank v. Brown,* 7 Wyo. 494, 53 P. 291 (1898); *Erskine Florida Properties, Inc. v. Hartwell,* 451 So.2d 976 (Fla.App.1984); *Ferris v. First Nat. Bank & Trust Co.,* 96 Wis.2d 476, 292 N.W.2d 357, 361 (App.1980). See also Annot., "Retrospective Application and Effect of State Statute or Rule Allowing Interest or Changing Rate of Interest on Judgments or Verdicts," 41 A.L.R. 4th 694 (1985).

**25.** *Shook & Fletcher Insulation Co. v. Central Rigging & Contracting Corp.,* 684 F.2d 1383, 1388–89 (11th Cir.1982).

**26.** *Noe v. Chicago,* 56 Ill.2d 346, 307 N.E.2d 376, 379 (1974).

**27.** *McBride v. Superior Court of Maricopa County,* see note 9, supra.

spective from the effective date of the new rate. *Shook, Noe,* and *McBride* provide the proper prototype for finding that the interest rate of the amended statute varies the prejudgment and postjudgment rate prospectively from the effective date of each amendment.

The underlying rationale for awarding interest at all is to compensate the prevailing party for the expenses incurred in bringing an action, for the delay in receiving money damages, and for the loss of the use of the principal.[28] In 1986, the Oklahoma Legislature included amendments to § 727 as a part of its popularly-denominated Tort Reform legislation.[29] At the time of the amendment, judgments bore interest at the rate of 15% per annum even though the average treasury bill rate was 6.03% per year.[30] The obvious legislative purpose expressed in § 727 was to link interest rates with changing economic conditions. The overriding legislative intent is the desirability of tying interest rates on judgments to rapidly fluctuating financial realities, and to avoid penalizing either the judgment debtor or the judgment creditor. Because the judgment debtor may invest the amount of the judgment at the contemporary cost of money pending appeal, neither of the parties suffer undue hardship

rather, this procedure more fairly maintains the status quo. If the Court continues to cling to the *Timmons* doctrine, it will ignore the unmistakable legislative directive, and risk unraveling the legislature's attempt to deal comprehensively with tort-related issues.

Generally, a case does not become final until the appeal or the right to appeal is exhausted.[31] According to *Walker v. St. Louis-San Francisco Ry. Co.,* 671 P.2d 672, 674 (Okl.1983), prejudgment interest should be calculated from September 21, 1973, (the date the suit was filed)[32] until October 1, 1979, at 6%. After October 1, 1979, until the date of judgment, interest should run at the rate of 10% per annum. Thereafter, the accrued amount merged in the judgment and the interest continued to run on the entire amount at 12% per year until April 1, 1982. After that date, interest on the judgment should be figured at an annual rate of 15% until January 1, 1987.[33] After January 1, 1987, the interest should run at 10.03%.[34] If the judgment is not paid during 1987, then the interest on the judgment from January, 1988, should be calculated at an annual rate equal to the average United States Treasury Bill rate of the preceding calendar year plus four percentage points.[35]

## APPENDIX A

Clear indicium of legislative intent to make prejudgment and postjudgment interest more responsive to the marketplace is reflected in the following comparisons (Thorndike Encyclopedia of Banking and Financial Tables, Ch. 1, p. 2–3 (Warren, Gorham & Lamont, 1987)):

28. *Jersey City v. Zink,* 133 N.J. Law 437, 44 A.2d 825, 828 (1945); *Farmer v. Stubblefield,* 297 Ky. 512, 180 S.W.2d 405 (Ky.1944); *Saber v. Saber,* 146 Mich.App. 108, 379 N.W.2d 478–79 (1986); *McGraw v. Parsons,* 142 Mich.App. 22, 369 N.W.2d 251, 254 (1985).

29. See Act of June 24, 1986, ch. 315, 1986 Okla. Laws 1524.

30. See note 1, supra.

31. *Ellison v. Gray,* 702 P.2d 360, 367 (Okl.1985).

32. Title 12 O.S.1971 § 727 provides in pertinent part:

"When a verdict for damages by reason of personal injuries is accepted by the trial court, the court in rendering judgment shall add interest on said verdict ... from the date the suit was commenced to date of verdict."

Although this statute has been amended numerous times this provision has remained unchanged.

33. Title 12 O.S.Supp.1982 § 727 provides in pertinent part:

"All judgments of Courts of record except the Workers' Compensation Court shall bear interest at the rate of fifteen percent (15%) per year, ..."

34. Title 12 O.S.Supp.1986 § 727(B) provides:

"B. For purposes of this section, interest shall be at an annual rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day in January of each year, plus four percentage points."

35. Id.

| | Prime Rate | | Okla. Stat. Rate | | | | Projected Statutory Rate |
| | Low — | High | Pre | and | Post | T-Bill Rate | T-Bill +4% |
|---|---|---|---|---|---|---|---|
| 1971 | 5.25% | 6.75% | 6.0% | | 10.0% | 4.348% | 8.348% |
| 1972 | 5.0% | 6.0% | 6.0% | | 10.0% | 4.071% | 8.071% |
| 1973 | 6.0% | 10.0% | 6.0% | | 10.0% | 7.024% | 11.024% |
| 1974 | 8.75% | 12.0% | 6.0% | | 10.0% | 7.873% | 11.873% |
| 1975 | 7.0% | 10.5% | 6.0% | | 10.0% | 5.283% | 9.283% |
| 1976 | 6.25% | 7.25% | 6.0% | | 10.0% | 4.296% | 8.296% |
| 1977 | 6.5% | 7.5% | 6.0% | | 10.0% | 6.063% | 10.063% |
| 1978 | 6.0% | 11.75% | 6.0% | | 10.0% | 9.122% | 13.122% |
| 1979 | 11.5% | 15.75% | 10.0% | | 12.0% | 12.071% | 16.071% |
| 1980 | 11.0% | 21.5% | 10.0% | | 12.0% | 15.681% | 19.681% |
| 1981 | 15.75 | 20.5% | 10.0% | | 12.0% | 10.926% | 14.926% |
| 1982 | 11.5% | 17.0% | | 15% | | 8.013% | 12.013% |
| 1983 | 10.5% | 11.5% | | 15% | | 8.960% | 12.960% |
| 1984 | 10.75% | 12.75% | | 15% | | 8.90% | 12.90% |
| 1985 | 9.5% | 10.75% | | 15% | | 7.49% | 11.49% |
| 1986 | | | | 15% variable beg. | | | |
| Jan. | 9.5% | | | 11–86 | | 6.03% | |
| Mar. | 9% | | | | | | |
| Apr. | 8.5% | | | | | | 10.03% |
| July | 8.0% | | | | | | |
| 1987 | | | | | | | |

OPALA, Justice, concurring in result.

For the reasons to be explained I cannot fully concur in today's pronouncement nor in the court's judgment.

## I

### FAILURE TO INSTRUCT ON NONTAXABILITY OF A PERSONAL INJURY AWARD

The transcript of proceedings reveals *neither* a mid-trial reference to the tax consequences of the plaintiffs' recovery *nor* a request to instruct the jury on nontaxability of a personal injury award. The trial of this suit took place *before* our mandate in *Middlebrook v. Imler, Tenny &*

*Kugler, M.D.'s.*[1] There I counseled that the teaching of *Liepelt*[2] be adopted for mandatory use in trials conducted after our mandate in *Middlebrook*.[3] *I do not today recede from that position.*

## II

### WHEN A COUNTERCLAIM TENDERING ISSUES RELATED TO THE TRANSACTION OR OCCURRENCE LITIGATED IN THE PLAINTIFF'S CLAIM REMAINS UNDETERMINED, A DECISION UPON A PLAINTIFF'S CLAIM DOES NOT CONSTITUTE A "JUDGMENT."

The hospital correctly contends that the severance of its counterclaim for unpaid

1. Okl., 713 P.2d 572, 587 (1986).

2. *Norfolk and Western Railway Company v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980).

3. *Middlebrook v. Imler, Tenny and Kugler, M.D.'s, supra* note 1.

medical bills from the plaintiffs' tort claim constituted a barrier to the rendition of a judgment on the jury verdict for the plaintiffs. This is so because by force of the provisions in 12 O.S. 1981 § 681[4] no judgment may be pronounced until all of the issues between the parties have been resolved.[5] When a counterclaim which tenders issues for resolution that are interrelated with the transaction or occurrence litigated in the plaintiff's claim remains undetermined, a decision on the plaintiff's claim alone cannot constitute a "judgment."[6]

### III

### THE RATE OF POSTJUDGMENT INTEREST TO BE APPLIED TENDERS ISSUES WHICH MUST BE LITIGATED AFTER REMAND

Judicial determination of postjudgment interest rate to be applied and the computation of the total amount of interest that is due upon the judgment affirmed today are issues to be litigated *after remand.*[7] I hence concur in the court's abstention from reaching and settling these issues at this time.

I would direct that the trial court's "judgment"—the decision here under review—be *vacated* rather than *stayed.* Because of its *premature* rendition *in advance* of the counterclaim's determination, *that judgment cannot presently stand.* When all the issues raised by the hospital's counterclaim have been resolved, the trial court may then reinstate its judgment on jury verdict for the plaintiff.

SIMMS, Justice, dissenting:

I respectfully dissent for the reasons expressed in my dissenting opinion in *Middle-*

---

4. The provisions of 12 O.S.1981 § 681 are: "A judgment is the final determination of the rights of the parties in an action."

5. *Hurley v. Hurley,* 191 Okl. 194, 127 P.2d 147 (1942) and *Methvin v. Methvin,* 191 Okl. 177, 127 P.2d 186 (1942).

6. *Dennis v. Lathrop,* 204 Okl. 684, 233 P.2d 969 (1951); *Fowler v. City of Seminole,* 196 Okl. 167, 163 P.2d 526 (1945) and *Hutchison v. Wilson,* 136 Okl. 67, 276 P. 198 (1929).

*brook v. Imler, Tenny & Kugler, M.D.'s, Inc.,* Okl., 713 P.2d 572, 587 (1985).

---

7. *Missouri-Kansas-Texas Railroad Co. v. Edwards,* Okl., 401 P.2d 303 (1961); *First Baptist Church, Bristow v. Holloway,* Okl., 402 P.2d 260, 262 (1965); *Reardon v. McDougal,* Okl., 524 P.2d 342, 344 (1974) and *Oklahoma Natural Gas Co. v. Williams,* Okl., 639 P.2d 1222, 1227 (1982). See also, *Gupton v. Western Kennel Club,* 193 Okl. 462, 145 P.2d 179 (1944) and *Baldwin v. Collins,* Okl., 479 P.2d 567, 570 (1971).