Bill BURWELL, as father and representative of the Estate of William "Hank" Burwell, deceased, Appellee,

v.

OKLAHOMA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.

No. 83025.

Court of Appeals of Oklahoma, Division No. 4.

March 21, 1995.

Certiorari Denied May 16, 1995.

**1196**

Jerry L. McCombs and Timothy Ragland, LeForce and McCombs, Idabel, for appellee.

Donald G. Hopkins, Tulsa, for appellant.

STUBBLEFIELD, Judge.

On May 22, 1988, William "Hank" Burwell was involved in an automobile accident and sustained multiple injuries that eventually resulted in his death. At the time of the accident, Burwell was one of two occupants of a pickup truck owned by his father, Plaintiff Bill Burwell. The other occupant of the vehicle was Tommy Julian. The Burwell vehicle was insured under a policy issued by Oklahoma Farm Bureau Mutual Insurance Company, which policy provided uninsured motorist (U.M.) coverage. The named insureds designated on the policy were "Burwell, Bill or Wanda." The Burwell vehicle collided with a pickup truck driven by Gregory Dagenhart. As a result of the impact, Burwell was thrown from the vehicle, and he lost consciousness. Tommy Julian claimed that Burwell was driving at the time of the accident.

Plaintiff, on behalf of the estate of his deceased son, filed this action on May 21, 1990, naming Dagenhart, Julian and Farm Bureau as defendants. Plaintiff alleged that Julian was the driver of the Burwell vehicle and that Julian's negligence—as well as that of Dagenhart—caused the death of his son, Hank.

Plaintiff further alleged that, in addition to providing U.M. coverage for the truck involved in the accident, Farm Bureau had issued policies covering four other Burwell vehicles. *As issued,* the limits of liability for each of the five policies were $100,000 per person and $300,000 per occurrence for bodily injury coverage, *and $25,000 per person*

*and $50,000 per occurrence for U.M. coverage.* However, Plaintiff claimed entitlement to U.M. limits of $100,000 for each policy, for a total of $500,000 in U.M. coverage, because he alleged that Farm Bureau had not offered U.M. limits in an amount equal to liability limits as required by the governing statute, 36 O.S.1981 § 3636.

Farm Bureau claimed that Hank Burwell, driving at an excessive rate of speed, rear-ended the Dagenhart vehicle and that his negligence was the sole and proximate cause of the accident that led to his death. Therefore, it maintained U.M. coverage was not applicable.

The case proceeded to trial only against Farm Bureau, because Julian and Dagenhart were dismissed by Plaintiff without prejudice. Shortly before trial, Plaintiff sought partial summary adjudication that, as a matter of law, a total of $500,000 in U.M. coverage was available because both named insureds had not rejected increased U.M. limits. Farm Bureau opposed the motion because it claimed that an offer of uninsured motorist limits equal to liability limits *was made to Plaintiff,* at the time he applied for the policies, and such offer was declined.

Because it was undisputed that no offer of increased limits was made to Wanda Burwell, and even though she was not a direct party to the action, the trial court found that Wanda Burwell was entitled to coverage of $500,000 for her wrongful death damages. However, insofar as concerned the offer of increased limits to Plaintiff, disputed issues of fact remained to be resolved by the jury.

Trial of the issues was bifurcated. During the first phase of the trial, the jury considered the issue of whether Hank Burwell's death was caused by the negligence of an uninsured driver—Julian—or whether he was operating the vehicle and his own negligence resulted in the accident. The jury determined that Julian was driving and that as a result of his negligence, Plaintiff was entitled to recover $516,766.70 in damages due to the death of Hank Burwell.

During the second phase of the trial, the jury was to determine whether Farm Bureau—through its agent—made the required

offer of increased U.M. limits to Plaintiff. The jury determined this issue in favor of Farm Bureau and returned a verdict finding "the uninsured motorist coverage in this case to be in the amount of $125,000."

Thereafter, however, the trial court determined that Farm Bureau was liable for $500,-000 of the $516,766.70 verdict. This was apparently based upon the finding regarding liability to non-party Wanda Burwell. The trial court then added to that amount statutory prejudgment interest calculated from May 21, 1990, at the rate of 12.35 percent, for a total judgment against Farm Bureau in the sum of $732,863.72. Farm Bureau appeals.

█ In its first proposition of error, Farm Bureau claims that the trial court erred in granting Plaintiff's motion for "partial summary judgment" determining Wanda Burwell was entitled to $500,000 in U.M. coverage. Farm Bureau emphasizes the jury's finding that increased limits of U.M. coverage were offered to her husband but not purchased.

█ Rights under uninsured motorist coverage depend on the statute in effect when the policy was last issued or renewed. *Uptegraft v. Home Ins. Co.*, 662 P.2d 681 (Okla. 1983). Under the version of the statute in effect at the time the subject policies were renewed[1], 36 O.S.1981 § 3636, an automobile insurance policy was required to provide a minimum amount of U.M. coverage, although U.M. coverage could be rejected, in writing, by the named insured. The statute further required that increased limits of liability for U.M. coverage "shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured." 36 O.S.1981 § 3636(B).

In *Plaster v. State Farm Mutual Automobile Insurance Co.*, 791 P.2d 813 (Okla.1989), the supreme court held that the terms of 36 O.S.1981 § 3636, did not authorize a husband to reject U.M. coverage for a wife when they

were both listed as named insureds. *Id.* at 814. Emphasizing that the terms of section 3636 control the contract, the court stated:

> [W]here an automobile insurance policy lists more than one individual as a "named insured," a written rejection of uninsured motorist coverage by less than all named insureds is not a complete rejection of that coverage.... However, such partial rejection does operate to estop an individual named insured who signs the rejection from asserting the uninsured motorist provisions of the policy.

*Id.*

Here, the question is whether the offer of increased U.M. coverage to a husband, and his refusal, are binding upon his wife, who is also a named insured. Plaintiff maintains that if a rejection of U.M. coverage must be made by each named insured, then the offer of increased coverage, likewise, must be made to and rejected by each named insured. On the other hand, Farm Bureau claims that the applicable statute is not so specific regarding refusal of optional increased coverage, and, therefore, a rejection by one party is sufficient.

There is a clear legislative intent in section 3636 to protect those who are legally entitled to recover from owners or operators of uninsured vehicles. *See Uptegraft*, 662 P.2d at 684. Thus, an insurer must offer a minimum amount of such coverage and a complete rejection of U.M. coverage is required to be in writing. The statutory language specified that "[t]he named insured," 36 O.S.1981 § 3636(F), had the right to reject U.M. coverage in writing but did not specify that one named insured, even a spouse, could give a written rejection for another named insured.[2] Thus, the *Plaster* court ruled that a written U.M. rejection by one named insured was not a complete rejection.

---

1. The policy applications and declaration sheet that were included in Plaintiff's trial exhibits covered the period of "2/2/87 to 8/2/87," but the accident occurred on May 22, 1988. Because the existence of the policies was not an issue, it is reasonable to assume that the policies were renewed on August 2, 1987, and every six months thereafter.

2. Section 3636 was amended in 1990, substituting "A named insured or applicant" for "The named insured," and providing that a rejection of U.M. coverage or selection of the optional increased limits "by a named insured or an applicant shall be valid for all insureds under the policy." 36 O.S.1991 §§ 3636(F) and (G).

The language of section 3636 is not so demanding regarding refusal of optional increased coverage, and does not require a written rejection. *Prideaux v. Allstate Ins. Co.*, 753 P.2d 935 (Okla.Ct.App.1987). The legislative intent seems to have been largely to promote minimal coverage to protect the motorists of this state. We see this as a critical distinction between total rejection of U.M. coverage and the mere refusal of higher coverage.

In our opinion, the statutory requirements for refusal of optional coverage are not as stringent as for the more drastic total rejection of such coverage. In that regard, the jury did find, based upon admitted evidence of Plaintiff's refusal of higher coverage, that the amount of available coverage was $125,-000. Furthermore, the policy of insurance designated the insured parties as "Burwell, Bill *or* Wanda" (emphasis added), which fact gives certain attributes of joint tenancy to the policy whereby *each* insured may exercise authority over the policy.

Therefore, we conclude that the trial court did err as a matter of law in its summary adjudication of the issue, and that the jury verdict fixing the amount of insurance coverage at $125,000 is controlling regarding the limits of Farm Bureau's liability. The judgment for $500,000 is erroneous in view of the jury determination of coverage limits.

■ For its next proposition of error, Farm Bureau claims that the trial court erred in instructing the jury that it could consider Hank Burwell's pain and suffering prior to his death as an element of damages. According to Farm Bureau, the evidence presented at trial was insufficient to allow the jury to consider the issue because after the accident until the time of his death, Hank Burwell was in an "unconscious state" with "no manifestation of pain and suffering." However, the jury used a general verdict form, and there is no indication in the record as to what amount, if any, the jury awarded for Burwell's pain and suffering. Farm Bureau did not object to the verdict forms submitted to the jury and may not ask this court to assume that an award for that element of damages was included in the jury's verdict. *See Missouri, K. & O. Transit Lines, Inc. v. Jackson*, 442 P.2d 287, 290 (Okla.1968).

■ Farm Bureau does not appeal the propriety of prejudgment interest, which when added to the judgment amount, exceeds its policy limits. *See Carney v. State Farm Mut. Auto. Ins. Co.*, 877 P.2d 1113 (Okla.1994). However, it does claim that, because there was a litigable controversy as to who was driving the vehicle, it should not be liable for any interest prior to the verdict deciding that issue. However, in pertinent part, 12 O.S.1991 § 727(A)(2), provides for prejudgment interest "when a verdict for damages by reason of personal injuries ... is accepted." The statute does not purport to limit such an award only to suits involving "litigable controversies." Even where liability is disputed in good faith, the award of prejudgment interest is proper. *Ace Elec. Co. v. Portland General Elec. Co.*, 55 Or.App. 382, 637 P.2d 1366 (1981). Furthermore, the appropriateness of prejudgment interest in a suit to collect U.M. coverage was settled by *Torres v. Kansas City Fire & Marine Insurance Co.*, 849 P.2d 407 (Okla.1993).

■ For its final proposition of error, Farm Bureau raises a more difficult issue. It claims that the trial court erred in determining the amount of prejudgment interest when it calculated the interest using the rate in effect when the lawsuit was filed in 1990. That rate, pursuant to section 727(B), was 12.35 percent. Farm Bureau maintains that the rate in effect when the verdict was returned in 1994—6.99 percent—should apply. Of course, the award of prejudgment interest is erroneous because it was based upon a $500,000 judgment and not the $125,000 amount we have determined appropriate herein. However, the applicable interest rate still must be determined.

Section 727 contains a formula for determining the rate of interest on judgments—both prejudgment and postjudgment interest. The statutory prescription provides for a changing yearly rate calculated by adding four percent to the average United States Treasury Bill rate for the preceding calendar year. Section 727 *does not* specify whether the applicable rate should be that in effect when the lawsuit was filed or the rate in effect at the date of judgment.

■ The question in regard to postjudgment interest is rather simplistic, be-

cause the right to the judgment amount only accrues on the date of judgment, and logically interest would run from that date. Thus, it is well settled that the *postjudgment* interest rate is that in effect at the time the judgment was entered. *Timmons v. Royal Globe Ins. Co.*, 713 P.2d 589 (Okla.1985). And, because of the rule that after-enacted legislation may not destroy or alter vested or accrued rights, the initially applicable statutory rate does not change in succeeding years. *Id.* at 594.[3]

"Prejudgment interest is in the nature of compensation for use by defendant of money to which plaintiff is entitled." 47 C.J.S. *Interest & Usury* § 49(a) (1982). Thus, section 727 requires a defendant to pay interest on the monies from *the time of the filing of the lawsuit,* so as to compensate the plaintiff for the loss of use of the money from that time up to the time of judgment. Plaintiff's loss is the value of the money for the time during which he was deprived of its use. *Fleming v. Baptist General Convention of Oklahoma,* 742 P.2d 1087, 1096 (Okla.1987). That sum— the yearly value of money—is what is generally fixed by the computation formula in section 727.

We note that in *Fleming,* the suit was filed on September 21, 1973, the verdict was returned on December 11, 1979, and the court was faced with a change in the statutory interest rate occurring between those dates. The court determined that the appropriate rate of prejudgment interest was the ten percent rate provided by 12 O.S.Supp.1979 § 727(2), the statute in effect at the time of the verdict, rather than the six percent rate provided by 12 O.S.1971 § 727(2), which was in effect at the time the plaintiff filed the suit. Although the *Fleming* court stated that "prejudgment interest is to be assessed at the rate provided by statute at the time of the verdict," *id.* at 1097, it is significant that the case dealt only with versions of section

727 that fixed the legal rate of interest without taking into account each year's fluctuating economic conditions. Herein, both the filing date and verdict date occurred after the 1986 amendment to section 727, which, for the first time, contemplated yearly changes in interest on judgments by linking annual interest rates to the average treasury bill rate as certified to the Court Administrator by the State Treasurer. 12 O.S.Supp. 1986 § 727(B).

We conclude that, consistent with the legislative purpose expressed in the latest amendment to section 727, the appropriate prejudgment interest award herein is the sum of each year's calculation of *simple*[4] interest based upon the appropriate yearly statutory rate. Thus, Plaintiff would be entitled to interest for the year 1990, the year in which he filed his lawsuit, calculated at 12.35 percent; for 1991 at 11.71 percent; for 1992 at 9.58 percent; for 1993 at 7.42 percent, and for 1994, the year in which judgment was rendered, at 6.99 percent.[5] This award more correctly would compensate Plaintiff for the actual loss of use of the money. It also prevents a windfall to the plaintiff who files a lawsuit at a time of high interest rates, which decrease thereafter, or a shortfall to the plaintiff in the reverse situation. Prejudgment interest calculated according to that formula is the sum of $46,275.62.

Therefore, we modify the judgment to the sum of $125,000 and prejudgment interest to the amount of $46,275.62, for a total sum of $171,275.62. We affirm the judgment of the lower court as modified.

AFFIRMED AS MODIFIED.

GOODMAN, P.J., and RAPP, V.C.J., concur.

---

**3.** There is a strong argument favoring the fluctuation of postjudgment interest according to the formula set forth in Section 727. *See Fleming v. Baptist General Convention,* 742 P.2d 1087, 1105 (Okla.1987) (Kauger, J., concurring).

**4.** An award of interest on judgment is for simple interest only, and not compound interest, because it is a sum added to a judgment—not a part of the judgment—and does not draw interest. *Banks v. Cimarron Ins. Co., Inc.,* 882 P.2d 580 (Okla.Ct.App.1994).

**5.** A recapitulation of interest rates is found at 12 O.S.Supp.1994 § 727. The yearly interest applies until the first regular business day of the succeeding year.