1998 OK CIV APP 136

**William L. PLUMMER, Petitioner,**

v.

**SPECIAL INDEMNITY FUND and The Workers' Compensation Court, Respondents.**

No. 90138.

Court of Civil Appeals of Oklahoma, Division No. 2.

June 16, 1998.

Certiorari Denied Sept. 16, 1998.

Gus Farrar, Farrar & Farrar, P.C., Tulsa, for Petitioner.

Georgiana Peterson, Henry A. Meyer III, Pray, Walker, Jackman, Williamson & Marlar, Oklahoma City, for Respondents.

*OPINION*

GOODMAN, Presiding Judge.

¶1 This is a proceeding to review an order of a Workers' Compensation Court three-judge panel affirming the trial court's order directing the Special Indemnity Fund to pay postjudgment interest on an unpaid award of permanent partial disability benefits. The claimant contends the trial court erred as a matter of law in failing to calculate postjudgment interest pursuant to the applicable statute in effect on the date the Fund was ordered to pay interest. Based upon our review of the record and applicable law, we vacate the order and remand the matter with directions.

I

¶2 On September 14, 1994, the Workers' Compensation Court filed an order granting claimant William L. Plummer benefits from the Special Indemnity Fund for a material increase in permanent disability caused by the combination of an injury he sustained in 1990 with his previous disabilities. The claimant filed a Form 9 May 3, 1995, seeking "[p]enalty, interest, and other relief for failure to timely pay Court order."

¶3 On October 17, 1996, the trial court found that "no payment on said award has been made by the Special Indemnity Fund." The court ordered "[t]hat pursuant to 85 O.S. Section 42 the Special Indemnity Fund is ordered to pay interest at the rate provided by the statute from the date ordered paid by the Court until the date of satisfaction."

¶4 The Fund paid one-half of the award in December 1996, and the other one-half in February 1997, including postjudgment interest of $1,949.96. The claimant filed a Form 13 Request for Prehearing Conference March 14, 1997, seeking Settlement of Journal Entry of Judgment.

¶5 The trial court held a hearing May 1, 1997, to determine the applicable amount of postjudgment interest to be paid by the Fund. The claimant argued the statutory rate of interest in effect on the date of the order to pay controls. The statute in effect on September 14, 1994, was 85 O.S.1991, § 42(A), which states in relevant part: "Any compensation awarded and all payments thereof directed to be made by order of the Court shall bear interest at the rate of eighteen percent (18%) per year from the date ordered paid by the Court until the date of satisfaction." Thus, the claimant contended the "interest owing should have been $4,106.06 [t]herefore there is a balance due of $2,156.10."

¶6 The Fund argued that postjudgment interest must be calculated on a fluctuating annual basis pursuant to an amendment to § 42, effective November 4, 1994, which states:

Compensation ordered to be paid from the Special Indemnity Fund shall bear interest at the rate of interest applicable to judgments in civil cases pursuant to Section 727 of Title 12 of the Oklahoma Statutes from the date of the award. *Any award from the Special Indemnity Fund prior to the effective date of this act [November 4, 1994] shall bear interest at the rate of interest applicable to judgments in civil cases pursuant to Section 727 of Title 12 of the Oklahoma Statutes from the effective date of this act.* (Emphasis added)(footnote omitted).

For support, the Fund cited *Fleming v. Baptist General Convention,* 1987 OK 54, 742 P.2d 1087, and *Burwell v. Oklahoma Farm Bureau Mutual Insurance Company,* 1995 OK CIV APP 50, 896 P.2d 1195. The trial court took the matter under advisement.

¶7 In an order filed June 6, 1997, the trial court noted the "claimant asserts that the modification of the rate of interest payable on Special Indemnity Fund awards entered but unpaid at the time of the legislative change is unconstitutional and amounts to a retroactive change in an accrued right." The court then engaged in an extensive analysis of due process and held "the statutory modification of the rate of post-judgment interest payable on final Special Indemnity Fund awards entered but unpaid at the time of the legislative change *is* constitutional." The court ordered the Fund to pay "the unpaid principal balance in the following manner":

From September 15, 1994 through November 3, 1994: 18% per annum;

From November 4, 1994 through December 31, 1994[:] 6.99% per annum;

From January 1, 1995 through December 31, 1995: 8.31% per annum;

From January 1, 1996 through December 31, 1996: 9.55% per annum;

And from January 1, 1997 through February 28, 1997: 9.15% per annum.

The award of interest is for simple interest only, and is not to be compounded.... This Order gives full effect to the clear intention of the Oklahoma Legislature as evidenced by it [*sic*] 1994 amendment to 85 O.S. Section 42(A). (Citation omitted.)

¶8 A Workers' Compensation Court three-judge panel affirmed the order. The claimant seeks our review.

## II

¶9 In its order, the trial court accurately recited principles of constitutional due process applicable to property. The trial court stated: "At issue in this case, however, is not the retroactive nullification of a cause of action, but rather, the post-order statutory modification of the rate of postjudgment interest payable by the Special Indemnity Fund." Citing *Fleming v. Baptist General*

*Convention,* 1987 OK 54, 742 P.2d 1087, the trial court concluded "the payment of interest on an outstanding order or judgment is 'a matter of legislative grace.'" The trial court also cited *Burwell v. Oklahoma Farm Bureau Insurance Company,* 1995 OK CIV APP 50, 896 P.2d 1195 *cert. denied.*

¶ 10 The authorities cited by the trial court do not support its conclusions. As noted by the trial court, the *Fleming* court specifically *did not address* the issue of whether a statutory amendment which changes the applicable rate of interest on judgments or verdicts should be applied retroactively, prospectively, or from the effective date of the amendment. The trial court's conclusion that "payment of interest on an outstanding order or judgment is 'a matter of legislative grace'" is based on a concurring opinion which addressed an issue the majority opinion did not address, and thus is not authority supportive of that conclusion.

¶ 11 The trial court's reliance on *Burwell* is misplaced. In *Burwell,* we discussed the distinct legal principles governing prejudgment interest and postjudgment interest. We stated "[t]he question in regard to postjudgment interest is rather simplistic .... it is well settled that the *postjudgment* interest rate is that in effect at the time the judgment is entered [and] after-enacted legislation may not destroy or alter vested or accrued rights...." *Burwell,* 1995 OK CIV APP at ¶ 22, 896 P.2d at 1198–99 (citation omitted).

¶ 12 Finally, quoting from *Funkhouser v. J.B. Preston Company, Inc.,* 290 U.S. 163, 167, 54 S.Ct. 134, 136, 78 L.Ed. 243 (1933), the trial court stated:

> The Supreme Court of the United States long ago endorsed the view that payment of interest was a matter of procedure "within the competency of the legislature." ... As stated by the Court, "the mere fact that such legislation is retroactive does not bring it into conflict with the guaranties of the Federal Constitution...." *Id.* at 167–68, 54 S.Ct. at 135–36. *See also Morley v. Lake Shore & Michigan Southern Ry. Co.,* 146 U.S. 162, 169–70, 13 S.Ct. 54, 57, 36 L.Ed. 925 (1892); *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) ("legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations") (citation omitted).

The trial court's reliance on *Funkhouser* is likewise misplaced.

¶ 13 *Funkhouser* was an action for unliquidated damages flowing from breach of a contract made in 1923. "There was no provision in the contract with respect to the recovery of interest in case of breach [and] at the time of the making of the contract the law of New York was not clear and certain as to the allowance of interest...." *Funkhouser,* 290 U.S. at 166, 54 S.Ct. at 135. After the contract was executed, the legislature enacted a statute to allow "interest on the principal sum awarded by verdict, report, or decision for breach of contract whether the principal sum so awarded was 'theretofore liquidated or unliquidated.'" The statute was limited to actions "for the enforcement of or based upon breach of performance of a contract ...." and applied to "every action *now pending or hereafter brought* ...." *Id.* at 165, n. 1, 54 S.Ct. at 135, n. 1 (emphasis added). The 1930 trial for breach of the contract resulted in a verdict for the plaintiff, "to the amount of which interest was added pursuant to the statute." *Id.*

¶ 14 The issue before the United States Supreme Court was whether retrospective application of the statute offended the constitutional protections of the contract clause by enlarging the obligations of the parties under the contract. The Court held:

> [T]he law, in force when the contract was made, required that in case of breach [the defendants] should make good the loss sustained by the [plaintiff]. The ascertainment of that loss, and of what would constitute full compensation, was a matter of procedure within the range of due process in the enforcement of the contract. "To enact laws providing remedies for a violation of contracts" and "to alter or enlarge those remedies from time to time" was within the competency of the Legislature.... The mere fact that such legislation is retroactive does not bring it into conflict with the guarantees of the Federal Constitution.... The parties make their

contract with reference to the existence of the power of the state to provide remedies for enforcement and to secure adequate redress in case of breach. (Citations omitted.) *Id.* at 167–68, 54 S.Ct. at 135–36. The Court concluded: "The decisive point ... is that the provision for the enlarged remedy was consistent with the substantial rights of the parties under their contract and cannot be regarded as an unreasonable exercise of legislative power." *Id.* at 169, 54 S.Ct. at 136.

¶ 15 Unlike the *Funkhouser* Court, we are not dealing with the retrospective application of a statute which supplements a silent contract term regarding *prejudgment interest* for breach of the contract. Nor are we confronted with an amendment applicable to "pending" actions. The issue before us is whether the terms of a court order awarding *postjudgment interest* may be altered by after-enacted legislation. We hold they may not.

¶ 16 Okla. Const. art. V, § 54, states:

The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued right, or penalty incurred, or proceedings begun by virtue of such repealed statute.

¶ 17 A fundamental rule of statutory construction is to ascertain and give effect to the legislative intent and purpose as expressed in the statute. *Hill v. Board of Education,* 1997 OK 107, 944 P.2d 930. The language of § 42, as amended, is clear and unambiguous: "Any award from the Special Indemnity Fund prior to the effective date of this act" shall be subject to the terms of the amendment "from the effective date of this act."

¶ 18 The Oklahoma Supreme Court, when it has been called upon to apply and interpret Okla. Const. art V, § 54 with respect to statutory amendments affecting postjudgment interest on judgments entered prior to the effective date of the amendment,

has been unwavering in its conclusion that the *"postjudgment* interest rate *in effect at the time of the judgment's rendition does not vary with any subsequent changes in the statutory rate level.* Both the effect and the validity of a judgment are governed by the law in force when the judgment is rendered. *No term of a judgment may be affected by after-enacted legislation." Timmons v. Royal Globe Ins. Co.,* 1985 OK 76, ¶ 13, 713 P.2d 589, 594 (emphasis added)(footnotes omitted). "To hold otherwise would undermine the constitutionally-shielded [*sic*] concept of an 'accrued' or 'vested' right in the adjudicated obligation. After-passed enactments can neither destroy nor alter that right." *Id.* The Oklahoma Supreme Court has not departed from the doctrine it expressed in *Timmons.*[1]

### III

¶ 19 Laws 1994, 2nd Ex.Sess., ch. 1, § 49, states: "The provisions of Sections 1 through 46 of this act determined by a court of competent jurisdiction to be *substantive and not procedural* in nature shall be applicable only to *injuries occurring on or after the effective date of this act."* (Emphasis added.)

¶ 20 We hold the statutory amendment of 85 O.S. Supp.1997, § 42, as applied to *injuries sustained* prior to November 4, 1994, is an unreasonable exercise of legislative authority affecting a *substantive right* of the claimant in violation of Okla. Const. art. V, § 54. The order under review is vacated and the matter is remanded with directions to award the claimant 18 percent postjudgment interest pursuant to 85 O.S.1991, § 42(A).

¶ 21 VACATED AND REMANDED WITH DIRECTIONS.

TAYLOR, C.J., and BOUDREAU, J., concur.

---

1. Indeed, in *Fleming,* the specially concurring opinion of Kauger, J., noted that "[i]f the Court continues to cling to the *Timmons* doctrine, it will ignore the unmistakable legislative directive, and risk unraveling the legislature's attempt to deal comprehensively with tort-related issues." *Fleming,* 1987 OK at ¶ 19, 742 P.2d at 1105. Nevertheless, the Oklahoma Supreme Court has not retreated from the *Timmons* doctrine.