# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3715

_____

Kristin Maddox,                                  *
                                                 *
              Appellant,                         *
                                                 *     Appeal from the United States
       v.                                        *     District Court for the
                                                 *     Eastern District of Arkansas.
American Airlines, Inc., a Delaware              *
Corporation,                                     *        **[PUBLISHED]**
                                                 *
              Appellee.                          *


_____

Submitted: October 16, 2001
     Filed: August 1, 2002

_____

Before McMILLIAN, BEAM, and HANSEN,[1] Circuit Judges.

_____

HANSEN, Circuit Judge.

A federal jury awarded Kristin Maddox over $11,000,000 in damages for personal injuries she suffered while she was a passenger on an American Airlines international flight that crashed in Little Rock, Arkansas. She now appeals, challenging the district court's rulings regarding prejudgment and postjudgment

_____

[1]Judge David R. Hansen became Chief Judge of the United States Court of Appeals for the Eighth Circuit on February 1, 2002.

interest rates. We affirm with the exception of one minor issue on which the parties agree.

## I.

Kristin Maddox, a resident of Oklahoma, was a passenger on American Airlines Flight 1420 when it crashed after running out of runway while landing at Little Rock, Arkansas, on June 1, 1999. Eleven people died as a result of the crash and many, like Ms. Maddox, were severely injured. Prior to the crash, Ms. Maddox had been a music major with an emphasis in vocal operatic performance and a minor in piano performance at Ouachita Baptist University. On the night of the crash, she was returning from Europe where she had been touring and performing with her college choir. Ms. Maddox suffered severe smoke and toxic fume inhalation that damaged her lungs and vocal chords, destroying her ability to sing. She also suffered severe burns to her hands and arms, impairing her ability to play a keyboard instrument of any kind.

Ms. Maddox filed suit in federal court in Arkansas seeking damages for her injuries. Prior to trial, American Airlines made payments to Maddox for medical expenses totaling $134,453. American Airlines conceded liability, leaving the amount of damages due as the only issue for trial, and it does not cross appeal the jury's damage award.

Because Maddox had been a passenger on an international flight, her claims are governed by the Warsaw Convention. See Convention for the Unification of Certain Rules Relating to International Transportation by Air, concluded at Warsaw, Poland, Oct. 12, 1929 (Warsaw Convention), 49 Stat. 3000, 3014 (1934), reprinted in note following 49 U.S.C. § 40105 (1994). Article 17 of the Warsaw Convention governs the liability of international air carriers for accidents in which a passenger is wounded on an international flight. El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng,

2

525 U.S. 155, 162 (1999). Article 22 creates monetary liability limits on damage awards against an international airline. Id. at 163 n.7. Recognizing that the liability limits of the Warsaw Convention, signed in 1929 and amended in 1955, are now inadequate in most countries, a group of international airlines, including American Airlines, has taken action to waive the Convention's liability limits through a series of agreements. See Lloyd v. Am. Airlines, Inc., 291 F.3d 503, 506 n.2 (8th Cir. 2002). Among the agreements supplementing the Warsaw Convention is the International Air Transport Association Intercarrier Agreement on Passenger Liability (the IATA Intercarrier Agreement). (Appellee's Add. at 3.) With listed exceptions for certain routes which do not apply to this case, the measures implementing the IATA Intercarrier Agreement impose absolute liability on an international carrier to the extent of 100,000 Special Drawing Rights (SDRs).[2] (Id. at 5.) For claims exceeding this amount, limited defenses are available to the airlines under the Warsaw Convention, but in all cases in which a passenger has been wounded in an accident, the IATA Intercarrier Agreement waives the Warsaw Convention's limitation of liability "on recoverable compensatory damages . . . so that recoverable compensatory damages may be determined and awarded by reference to the law of the domicile of the passenger." (Id. at 3.) The provisions are implemented in the carrier's tariffs and the contract of carriage between the carrier and its passenger. The passenger's domicile in this case is Oklahoma, and prior to trial, American Airlines stipulated that "Oklahoma law applies to damages issues in this lawsuit." (J.A. at Tab 6.)

---

[2]SDRs are a type of international monetary reserve currency or accounting system created in 1968 by the International Monetary Fund, see http://www.encyclopedia.com/articles/12191.html, which is a specialized agency of the United Nations that determines the value of SDRs relative to the currencies of the five largest exporting nations, see http://www.encyclopedia.com/articles/23338.html. The parties agree that American Airlines' advance payment of $134,453 was the equivalent of 100,000 SDRs.

Following trial, the jury returned a general verdict form fixing damages at $11,015,000. The district court entered judgment in favor of the plaintiff in this amount and ordered that the judgment bear postjudgment interest at the rate of 6.375% pursuant to federal statute. Maddox moved to amend the judgment, requesting prejudgment interest in accordance with Oklahoma law and requesting that the judgment bear postjudgment interest at Oklahoma's rate of 8.73% as opposed to the federal rate of 6.375%. Also, both parties agreed that the judgment should be amended to deduct from the total damage award the pretrial SDR payments made by American Airlines to Maddox in the amount of $134,453.

The district court granted in part and denied in part the motions to amend the judgment. Maddox v. Am. Airlines, Inc., 115 F. Supp. 2d 993, 996 (E.D. Ark. 2000). Specifically, the district court denied Maddox's request for any prejudgment interest on the damage award, denied Maddox's request for postjudgment interest at the Oklahoma rate, and granted the joint request to credit the judgment with American Airlines' pretrial SDR payment of $134,453. The district court also credited interest on that payment in the amount of $4,051.93, although neither party had requested this further reduction. Ms. Maddox appeals.

II.

Ms. Maddox first contends that the district court erred by applying Arkansas's choice of law rules to determine whether to award prejudgment interest because the parties had agreed by stipulation and the IATA Intercarrier Agreement that Oklahoma law would govern the damages issue. "We review the district court's choice of law determinations de novo." Inacom Corp. v. Sears, Roebuck & Co., 254 F.3d 683, 687 (8th Cir. 2001). Similarly, we apply de novo review to the district court's determinations of state law. Salve Regina Coll. v. Russell, 499 U.S. 225, 231-32 (1991).

4

Because actions under the Warsaw Convention, an international treaty, present federal law questions, a federal forum is available, but the Convention itself does not include a choice of law provision. The Supreme Court has indicated that Article 17 of "the Warsaw Convention permit[s] compensation only for legally cognizable harm, but leave[s] the specification of what harm is legally cognizable to the domestic law applicable under the forum's choice of law rules." Zicherman v. Korean Air Lines Co., 516 U.S. 217, 231 (1996). Thus, Article 17 is a "pass-through" provision which, absent special federal legislation applicable to Warsaw Convention cases, provides nothing more than an authorization to apply whatever law would govern in the absence of the Warsaw Convention. Id. at 229; see also Ins. Co. of N. Am. v. Fed. Express Corp., 189 F.3d 914, 920 (9th Cir. 1999); Brink's Ltd. v. S. African Airways, 93 F.3d 1022, 1029 (2d Cir. 1996), cert. denied, 519 U.S. 1116 (1997).

While ordinarily the choice of law rules of the forum would apply to determine the applicable law that governs what harm is legally cognizable, the IATA Intercarrier Agreement and its implementing provisions make an express choice of law applicable to this case, stating that "recoverable compensatory damages" will be determined by reference to the law of the passenger's domicile or permanent residence, which is Oklahoma in this case. (Appellee's Add. at 3, 5.) Also, American Airlines agreed in a pretrial stipulation that the "damages issues" in this lawsuit should be governed by Oklahoma law. (J.A. at Tab 6.) Accordingly, the district court properly chose to apply Oklahoma's law on damages generally. Ms. Maddox argues that prejudgment interest is within the meaning of "recoverable compensatory damages" under the IATA Intercarrier Agreement and its implementing provisions or within the term "damages issues" as used in the stipulation, and therefore prejudgment interest should have been awarded according to Oklahoma law, and not denied under Arkansas law.

The applicable agreements do not define the terms "recoverable compensatory damages" or "damages issues." Thus, we look to Oklahoma law to determine whether prejudgment interest may be characterized as within their meanings. By

statute, Oklahoma law requires prejudgment interest to be added to a personal injury judgment from the date when the lawsuit was filed, Okla. Stat. tit. 12, § 727E, but prejudgment interest is not itself a measure of compensatory damages. The courts of Oklahoma have expressly stated that "prejudgment interest under § 727 is not of the substance of the right of action." Shoemaker v. First Nat'l Bank & Trust, 11 P.3d 1265, 1267 (Okla. Civ. App. 2000). Oklahoma courts consider prejudgment interest to be procedural only, and not a substantive right. Fields v. Volkswagon of Am., Inc., 555 P.2d 48, 63 (Okla. 1976) (holding that prejudgment interest is procedural only so the statute applies to a case even where the suit was filed before the legislation became effective). Because prejudgment interest is recoverable by statute as a cost of litigation, it is not an element of damages under Oklahoma law. Benson v. Blair, 515 P.2d 1363, 1365 (Okla. 1973) (addressing the retrospective application of the statute). Even though the Oklahoma courts indicate that prejudgment interest is mandated as a monetary recovery that is intended to compensate for the lost use of the money awarded as damages, prejudgment interest does not itself rise to the level of an element of damages in the personal injury claim. Carney v. State Farm Mut. Auto. Ins. Co., 877 P.2d 1113, 1118 (Okla. 1994); Fleming v. Baptist Gen. Convention, 742 P.2d 1087, 1096 (Okla. 1987); see also Burwell v. Okla. Farm Bureau Mut. Ins. Co., 896 P.2d 1195, 1199 n.4 (Okla. Ct. App. 1995) (noting that an award of interest "is a sum added to a judgment–not part of the judgment").

Ms. Maddox argues that a recently decided case from the Supreme Court of Oklahoma indicates that the Oklahoma courts now consider prejudgment interest as "recoverable compensatory damages" or as a "damages issue" because the court expressly states that prejudgment interest is "an item of damages owed for the delayed satisfaction of an obligation." McDonald v. Schreiner, 28 P.3d 574, 577 (Okla. 2001). We disagree with her assertion that this statement renders prejudgment interest an element of damages in a personal injury case. The court noted that prejudgment interest may be characterized as "damages" owed for the delay in use of the money judgment, but the court also goes on to clearly state that this delay

6

"constitutes an expense incident to the chosen course of litigation." Id. (emphasis omitted). In other words, prejudgment interest remains a cost of litigation. See id.

Because prejudgment interest is not characterized as an element of damages or as "recoverable compensatory damages" under Oklahoma law, the issue of prejudgment interest is not governed by the choice of law provision of the IATA Intercarrier Agreement or the pretrial stipulation in this case. But see Johnson v. Cont'l Airlines Corp., 964 F.2d 1059, 1064 (10th Cir. 1992) (holding under Idaho law that prejudgment interest is not subject to an independent choice of law analysis apart from the issue of compensatory damages). Absent an express choice of law, the Warsaw Convention leaves "the specification of what harm is legally cognizable to the domestic law applicable under the forum's choice-of-law rules." Zicherman, 516 U.S. at 231. Ms. Maddox argues that the district court erred by not applying the federal choice-of-law rules, asserting a split in the circuits regarding whether to interpret "forum" as referring to the federal court or the state in which the court sits. In Pescatore v. Pan Am. World Airways, 97 F.3d 1, 9 (2d Cir. 1996), and Ins. Co. of N. Am. v. Fed. Express Corp., 189 F.3d 914, 920 (9th Cir. 1999), each court concludes that the forum state's choice of law rules should apply. The courts reason that the state law governs because Zicherman declared Article 17 to be a pass-through provision, which merely authorizes courts to apply the law that would govern in its absence. Pescatore, 97 F.3d at 9; Fed. Express Corp., 189 F.3d at 920. The "contrary" Sixth Circuit case simply presented a different factual scenario. In Bickel v. Korean Air Lines Co., 83 F.3d 127, 130-31 (6th Cir. 1996), vacated in part on separate issue, 96 F.3d 151 (6th Cir. 1996), the case did not involve citizens of different states but of different countries. Similarly, in Zicherman, the accident occurred on the high seas, and the choice of law was first a choice between foreign law or the laws of the United States, making federal forum choice-of-law rules applicable.

The present case is more akin to the Second and Ninth Circuit cases in which no federal statute furnished a rule of law with respect to damages. The accident clearly occurred in Arkansas, and state-law personal injury damages were at issue, not federal substantive law. Thus, federal choice-of-law rules were not implicated.

We conclude that the district court correctly considered and applied Arkansas's choice-of-law rules to the issue of prejudgment interest. The district court determined that Arkansas's choice-of-law rules dictated that it should apply the substantive law of Oklahoma. However, because Oklahoma considers prejudgment interest as procedural only and not substantive, Arkansas law, the law of the forum, would apply to the prejudgment interest issue, and prejudgment interest would not be allowed under Arkansas law. We find no error in the district court's application of Arkansas's choice of law principles, and Ms. Maddox challenges only the choice of the law applied by the district court; she does not assert that the district court incorrectly concluded that she is not entitled to prejudgment interest under Arkansas law as it presently exists.

III.

Ms. Maddox next argues that she is entitled to postjudgment interest on the verdict at the rate prescribed by Oklahoma law, rather than the rate prescribed by federal law as applied by the district court because the parties' choice of law to govern damages issues also extends to the issue of postjudgment interest. We disagree. A federal statute prescribes the relevant postjudgment interest rate and dictates that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C.A. § 1961(a) (1994). We have specifically held that, unless a case is expressly exempt from the scope of this statute, the federal postjudgment interest rate applies to cases adjudicated in federal court, regardless of whether the basis for jurisdiction was federal question or diversity. See, e.g., Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co., 933 F.2d 1433, 1435 (8th Cir.

1991) ("In a diversity action, state law governs prejudgment interest; federal law governs postjudgment interest."); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Knudsen</u>, 749 F.2d 496, 497 (8th Cir. 1984) (holding that because § 1961(a) does not exempt diversity actions from its scope, "federal, not state law, determines the interest rate in such actions"); <u>Wietz Co. v. Mo-Kan Carpet, Inc.</u>, 723 F.2d 1382, 1385-86 (8th Cir. 1983). Accordingly, the district court properly applied the federal rate of postjudgment interest.

Finally, both parties agree that the district court should not have deducted from the verdict an amount representing interest on the pretrial SDR payments in light of the court's refusal to add prejudgment interest on the judgment. We agree, and accordingly, we reverse the portion of the district court's judgment that reduces the verdict by an amount representing interest on the SDR payments ($4,051.93). The verdict should have been reduced only by the actual amount of payments made as SDRs.

IV.

Accordingly, we reverse the district court's decision to deduct from the verdict interest on the SDR payments, and we remand for entry of an amended judgment that reduces the verdict only by the actual amount of the SDR payments–$134,453. In all other respects, we affirm the judgment of the district court. Finally, we overrule American Airlines' motion to strike both the appellant's Rule 28(j) letter and her response to American's Rule 28(j) citation.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9