# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2861

_____

| | | |
|---|---|---|
| Joe Rustenhaven, husband; | * | |
| Mary Rustenhaven, wife, | * | |
| | * | |
| Appellees, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | Eastern District of Arkansas. |
| | * | |
| American Airlines, Inc., | * | |
| | * | |
| Appellant, | * | |

_____

Submitted:  April 16, 2002

Filed:  February 21, 2003

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Appellant American Airlines (American) appeals from the judgment entered on verdicts for appellees Joe and Mary Rustenhaven  (Mr. and Mrs. Rustenhaven). We affirm, conditioned on the acceptance by the Rustenhavens of the remittiturs ordered on their respective verdicts.

The Rustenhavens brought suit for damages resulting from the crash of American's Flight 1420 in Little Rock, Arkansas, on June 1, 1999, for which

American admitted liability.[1] They sought damages for Mr. Rustenhaven's lost past wages, his lost earning capacity, his past and future medical costs, and his pain and suffering and for Mrs. Rustenhaven's loss of consortium. After a four-day trial, the jury returned verdicts of $4,242,000 for Mr. Rustenhaven and $2,000,000 for Mrs. Rustenhaven. American renewed its motion for judgment as a matter of law and filed a motion for new trial, or, in the alternative, for remittitur, challenging the verdicts as excessive as a matter of law. It is from the district court's denial of those motions that American now appeals.

## I.

Mr. Rustenhaven was traveling from California to Little Rock, Arkansas, aboard Flight 1420 in order to deliver a presentation as part of the relocation to Maumelle, Arkansas, of the military division of his employer, BEI. Sixty years old at the time, he had been selected to head the purchasing department and was scheduled to move to Arkansas at the end of June 1999. As recounted in Manus v. Am. Airlines, Inc., 314 F.3d 968 (8th Cir. 2003), Flight 1420 was delayed at least twice and did not approach Little Rock until almost midnight on June 1, 1999. As the plane touched down during a raging thunderstorm, it ran off the runway and finally came to rest after striking an electrical stanchion and breaking into three pieces.

As the plane came to a stop, Mr. Rustenhaven, who was seated in an emergency exit row, was hit on the head and briefly lost consciousness. When he regained consciousness, he saw burning wires directly in front of him. He attempted to unbuckle his seatbelt, but could not do so. He was then struck on the head again and once again briefly lost consciousness. Upon regaining consciousness, he again

---

[1]For other decisions regarding the litigation resulting from the crash of Flight 1420, see Manus v. Am. Airlines, Inc., 314 F.3d 968 (8th Cir. 2003); Maddox v. Am. Airlines, Inc., 298 F.3d 694 (8th Cir. 2002); Lloyd v. Am. Airlines, Inc., 291 F.3d 503 (8th Cir. 2002); and Chu v. Am. Airlines, Inc., 285 F.3d 756 (8th Cir. 2002).

attempted to escape his seatbelt and unsuccessfully tried to open the emergency exit door. As he arose from his seat after finally managing to release his seat belt, he could see that some of the passengers were afire. As he stepped out into the aisle, he was knocked down and trampled as other passengers pushed to escape the burning aircraft. Regaining his feet, he made his way to an over-wing exit, where he either slipped or was pushed onto the wing, once again striking his head and losing consciousness. After regaining consciousness, he dropped from the wing to the ground and was pulled away from the plane by another passenger. As he walked unsteadily in the rain and pelting hail to distance himself farther from the plane, he fell into a tributary of the Arkansas River and was swept a short way down stream. After he pulled himself from the river, he could see that the rear of the plane was on fire, and he saw a woman passenger, clothes smoking, approaching him. The two attempted to make their way back toward the airplane, but became separated in the tall grasses that surround the river. Eventually he reached an area where other survivors were gathered. He lay down on the ground and waited until fire fighters arrived. He was ultimately transported to a local hospital, where he remained until June 4. While hospitalized, he underwent a number of tests, including a CAT scan and MRI, which revealed no abnormalities.

Following his discharge from the hospital and up until the time of trial, Mr. Rustenhaven was examined and evaluated by three medical doctors, five psychiatrists, one clinical social worker, one neurologist, one neuropsychologist, and one psychotherapist. He was diagnosed as suffering from cognitive deficits, anxiety disorder, post-concussive syndrome, post-traumatic stress headaches, post-traumatic stress disorder (PTSD), major depression, and petit mal absence seizures. His symptoms included insomnia, flashbacks, nightmares, hallucinations, lack of concentration, forgetfulness, and increased startle response. At the time of trial, he was taking numerous prescribed medications to treat his sleeplessness, headaches, hallucinations, and seizure activity.

-3-

Two weeks after the crash, the Rustenhavens followed through on their plans to move to Arkansas, whereupon Mr. Rustenhaven started his new position as head of the purchasing department. Although he performed acceptably at his job, even earning an above average performance rating, both he and Mrs. Rustenhaven noticed changes in his behavior and outlook. He found it difficult to concentrate at work, called Mrs. Rustenhaven approximately twelve times a day, and rarely, if ever, worked a full day. He reduced his time in the office to half days and was ultimately placed on permanent disability.

Since the crash, the Rustenhavens have experienced a deterioration in their marital relationship. Because of Mr. Rustenhaven's lack of interest in such activities, they no longer take long walks, go fishing regularly, eat out at restaurants, or attend movies. They found it necessary to purchase a king-size bed because of Mr. Rustenhaven's frequent jerking and spasms from nightmares. They have not been sexually intimate since the crash.

Mr. Rustenhaven's relationship with his children and grandchildren has also changed. He no longer talks to his daughter or grandchildren on the telephone, instead using Mrs. Rustenhaven as a conduit through which to express himself. Although his son tries to visit often, their relationship is not the same as it was before the crash. On the one occasion that Mr. Rustenhaven attempted to attend a family gathering at his son's home, he hid in the bedroom because he could not endure the number of people or the related activity.

## II.

American asserts that the awards to the Rustenhavens are excessive as a matter of law and that the district court abused its discretion by not granting American a new trial or, in the alternative, a remittitur.

## A.

A district court's denial of a motion for new trial is reviewed for abuse of discretion. Lloyd v. Am. Airlines, Inc., 291 F.3d 503, 509 (8th Cir. 2002) (citing Van Steenburgh v. Rival Co., 171 F.3d 1155, 1160 (8th Cir. 1999)). The question of the excessiveness of a verdict in a diversity case such as this is judged in accordance with state substantive law. See Schaefer v. Spider Staging Corp., 275 F.3d 735, 738 (8th Cir. 2002) (citing Gasperini v. Ctr. for Humanities, 518 U.S. 415, 426-38 (1996)); Manus, 314 F.3d at 973. Under Arkansas's standard of review, a verdict is excessive where "the award is so great that it shocks the conscience of the court or demonstrates that the trier of fact was motivated by passion or prejudice." Peoples Bank & Trust Co. v. Globe Int'l Publ'g, Inc., 978 F.2d 1065, 1071 (8th Cir. 1992). The manner in which we review the evidence is a procedural matter governed by federal law. Schaefer, 275 F.3d at 738.

"A motion for new trial is appropriately granted if the verdict is against the weight of the evidence and if allowing it to stand would result in a miscarriage of justice." Lloyd, 291 F.3d at 508-09. "On a motion for new trial, the district court is entitled to interpret the evidence and judge the credibility of witnesses, but it may not usurp the role of the jury by granting a new trial simply because it believes other inferences and conclusions are more reasonable." Van Steenburgh, 171 F.3d at 1160 (citing White v. Pence, 961 F.2d 776, 780-81 (8th Cir. 1992)). "In reviewing the district court's decision, we give great deference to its judgment, because the district court has the benefit of hearing testimony and observing the demeanor of witnesses throughout the trial." Bonner v. ISP Techs., Inc., 259 F.3d 924, 932 (8th Cir. 2001) (citing Sanford v. Crittenden Mem'l Hosp., 141 F.3d 882, 884 (8th Cir. 1998)).

-5-

## B.

We turn first to the question of the excessiveness of the loss of consortium award. Notwithstanding the deference we must afford the district court's determination, we conclude that the award is excessive under the Arkansas shock-the-conscience standard of review. In so holding, we note that in denying the new trial motion, the district court observed that the award was "quite high." Although there is evidence that supports some award for loss of consortium, Arkansas case law does not support an award of this size.

We must view each award on its own merits. Morrison v. Lowe, 625 S.W.2d 452, 455-56 (Ark. 1981). Past awards, however, can be useful in determining what is fair and reasonable according to the evidence presented at trial, and Arkansas courts look to previous cases for guidance. Scott v. Jansson, 516 S.W.2d 589, 592 (Ark. 1974) (viewing evidence and amount of verdict "[i]n the light of our earlier cases").

Consortium includes "comfort, society, affection, services, and other indefinable elements reasonably expected from the injured [spouse]." Johnson Timber Corp. v. Sturdivant, 752 S.W.2d 241, 253 (Ark.), set aside on other grounds, 758 S.W.2d 415 (Ark. 1988). It may not include damages personal to the injured spouse. See Scott, 516 S.W.2d at 592; Bailey v. Stewart, 364 S.W.2d 662, 663-64 (Ark. 1963). In order to gauge the extent of the loss, the jury may take into consideration the quality of the marital relationship before the injury, Mo. Pac. Transp. Co. v. Miller, 299 S.W.2d 41, 46 (Ark. 1957), and the severity and length of the injury to the primary plaintiff. Morrison, 625 S.W.2d at 456; Scott, 516 S.W.2d at 592; Bailey, 364 S.W.2d at 664. The Rustenhavens argue that Mrs. Rustenhaven must be compensated not only for the loss of the marriage relationship she shared with Mr. Rustenhaven, but also for having "gained" a dependent spouse. They cite

-6-

to no authority for this proposition, however, and we are not persuaded that any such authority exists in Arkansas law.

It is undisputed that the Rustenhavens have experienced a diminishment in the enjoyment they formerly experienced from participating in the activities described above. They also have not been sexually intimate since the crash, in contrast to their pre-crash sexual relations, which Mrs. Rustenhaven described as "probably normal." Although Mrs. Rustenhaven testified that this lack of sexual intimacy bothered Mr. Rustenhaven, she did not testify that it had a similar effect upon her. There was also evidence, however, that Mr. Rustenhaven had experienced stress and depression back in 1996-97 and had complained to his then-treating physician of having lost interest in food and sex.

In addition to the change in the sexual-intimacy aspect of their relationship, Mr. Rustenhaven no longer assists Mrs. Rustenhaven in meal preparation by grilling out or otherwise helping to prepare meals as he did prior to the crash. On the other hand, he has taken over all of the yard work, which the two previously had shared. Although he is much more dependent upon Mrs. Rustenhaven than he was before the crash, Mr. Rustenhaven does make trips to the store and to his therapy appointments and continues to drive an automobile.

There was testimony that the marital relationship would continue to change and that Mrs. Rustenhaven would become a full-time care giver rather than a wife. As pointed out above, however, this type of evidence relates to damages personal to the injured spouse and not that properly encompassed within an award for loss of consortium. See, e.g., Morrison, 625 S.W.2d at 456. We have no way of calculating the precise amount that the jury may have awarded based upon this erroneously admitted evidence, but given the prominence it played in Mrs. Rustenhaven's description of the post-crash changes in her husband's relationship with her and her children, we cannot assume that it did not have a substantial effect upon the verdict.

We have not been cited to any Arkansas case that has upheld a verdict for loss of consortium in the amount awarded in this case. We acknowledge, of course, that each case must be judged upon its own facts, but in light of the loss of consortium awards upheld in other cases, and even after taking into account the diminished value of the dollar, we believe that the award in this case is excessive under the Arkansas shock-the-conscience standard of review. See, e.g., Ouachita Nat'l Bank v. Tosco Corp., 716 F.2d 485 (1983) (en banc); Johnson Timber Corp., 752 S.W.2d 241.

In sum, then, although Mrs. Rustenhaven is without doubt entitled to an award for loss of consortium, we conclude that the evidence does not support an award in the amount of $2 million and that the verdict must therefore be reduced or a new trial ordered. Accordingly, and consistent with our authority to order a remittitur on appeal, see Lloyd, 291 F.3d at 513 and cases cited therein, we conditionally affirm the judgment entered on the verdict, subject to Mrs. Rustenhaven's acceptance of a remittitur judgment in the amount of $500,000 on her loss of consortium claim.

## C.

American contends that the award of non-economic damages to Mr. Rustenhaven is excessive as a matter of law. Although we agree that this award must be remitted or a new trial ordered, we conclude that American has understated the emotional trauma that Mr. Rustenhaven was subjected to as a result of the crash.

In support of its argument that case law does not support an award of this magnitude, American relies, as it did in Manus, in large part upon cases that did not involve the life-threatening ordeal experienced by Mr. Rustenhaven and the passengers on Flight 1420, citing cases of employment discrimination, defamation, false light invasion of privacy, and conversion.

There is no question that Mr. Rustenhaven has suffered mental and emotional consequences as a result of the crash, the extent and degree of severity of which were hotly contested at trial. American contends that the verdict is excessive because Mr. Rustenhaven did not suffer a brain injury, has never suffered hallucinations, and has exaggerated all of his symptoms. Likewise, American points to the undisputed evidence that Mr. Rustenhaven suffered from stress and depression well before the crash. On the other hand, there was expert testimony that neuropsychological testing revealed cognitive deficits that had their genesis in a right frontal brain injury. Likewise, there was testimony from lay persons about how those cognitive deficits manifested themselves in Mr. Rustenhaven's day-to-day life. The jury was instructed regarding its prerogative to give whatever weight it deemed proper to the opinions offered by the several expert witnesses. Accordingly, the jury was not obligated to accept the opinion of American's forensic psychiatrist, who testified that Mr. Rustenhaven exhibited the symptoms of factitious disorder.

There was evidence from which a reasonable jury could find that Mr. Rustenhaven suffers and will continue to suffer from numerous impairments, including depression, PTSD, and cognitive deficits; that he was forced to give up a job in which he had thrived; that his relationship with his wife has deteriorated; and that his relationship with his children and grandchildren has been adversely affected. It was for the jury to determine, based upon its observation of Mr. Rustenhaven's demeanor on the witness stand, whether he was exaggerating or fabricating his physical and emotional injuries.

American contends that the speculative nature of the testimony regarding Mr. Rustenhaven's loss of earning capacity and his future medical expenses contributed to the excessiveness of the verdict. Without recounting this evidence in detail, and granting that the portion thereof which dealt with the likelihood of future medical expenses was less than compelling, we conclude that it was sufficiently probative to support a substantial award for those elements of damages.

Likewise, we conclude that the district court did not abuse its discretion in overruling American's objection to the proposed testimony of one of Mr. Rustenhaven's expert witnesses to the effect that his seizures resulted from the crash. See, e.g., United Fire & Cas. Co. v. Historic Pres. Trust, 265 F.3d 722, 726 (8th Cir. 2001). In so holding, we note that American first raised its Daubert objection to this testimony at the pre-trial conference held the day before the trial was to commence. We have no reason to believe that the district court did not give the objection the careful attention it deserved in the time available for review.

In sum, then, we conclude that the evidence was sufficient to support a substantial award for Mr. Rustenhaven's loss of earning capacity, his future medical expenses, and his pain and suffering. Nevertheless, we also conclude that the award exceeds that which we referred to in Manus as "the outer limit" of an award for damages for injuries in the nature of those suffered by Mr. Rustenhaven. 314 F.3d at 974. As we said with respect to the award in Lloyd, "Clearly [Mr. Rustenhaven] suffered compensable physical injuries and it is equally clear that some of [his] emotional trauma can be fairly traced to those injuries." 291 F.3d at 512. Accordingly, and consistent with what we did in Lloyd, we prefer to grant Mr. Rustenhaven the opportunity to accept a remittitur in lieu of the necessity of another adversary proceeding. We therefore hold that although the judgment in Mr. Rustenhaven's favor should be affirmed, we condition such affirmance on his acceptance of a remittitur for judgment in the amount of $3,242,000.

**Conclusion**

We conditionally affirm the judgment entered on the verdict in favor of Mrs. Rustenhaven, subject to her acceptance of a remittitur judgment in the amount of $500,000. Absent her acceptance of the remittitur, we reverse and remand for new trial on her claim of damages for loss of consortium.

We conditionally affirm the judgment entered on the verdict in favor of Mr. Rustenhaven, subject to his acceptance of a remittitur judgment in the amount of $3,242,000. Absent Mr. Rustenhaven's acceptance of the remittitur, we reverse and remand for new trial on his claim of damages for his lost earning capacity, his past and future medical costs, and his pain and suffering.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-